IN THE MATTER OF PATERSON POLICE PBA LOCAL NO. 1, RESPONDENT, v. CITY OF PATERSON, APPELLANT.

Argued April 7, 1981—Decided July 16, 1981.

*James A. Farber*, Assistant Corporation Counsel, argued the cause for appellant (*Henry Ramer*, Corporation Counsel, attorney).

*David W. Carroll*, General Counsel, argued the cause for *amicus curiae* New Jersey School Boards Association.

*Mark C. Rushfield* argued the cause for respondent (*Mr. Rushfield*, attorney; *Mr. Rushfield* and *John A. Craner*, on the briefs).

*Sidney H. Lehmann*, General Counsel, argued the cause for respondent Public Employment Relations Commission (*Mr. Lehmann*, General Counsel, attorney; *Mr. Lehmann* and *James F. Schwerin*, Deputy General Counsel, on the briefs).

*Barry H. Evenchick* argued the cause for *amicus curiae* New Jersey State Policemen's Benevolent Association (*Mr. Evenchick*, attorney, *James R. Zazzali*, and *Dennis J. Alessi*, of counsel; *Mr. Evenchick, Mr. Zazzali, Mr. Alessi* and *J. Sheldon Cohen*, on the briefs).

*Erminie L. Conley*, Assistant Attorney General, argued the cause for *amicus curiae* State of New Jersey (*Judith A. Yaskin*, Acting Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

PASHMAN, J.

In this case we address a question left undecided in *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 *N.J.* 144 (1978), and *Bd. of Ed. of Woodstown-Pilesgrove v. Woodstown-Pilesgrove Regional Ed. Ass'n*, 81 *N.J.* 582, 588 n. 1 (1980), namely, whether and to what extent a permissive category of subjects for negotiation exists for police and firefighters under the New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A–1 to –21. Specifically, the issue in this case is whether a provision in a collective negotiation agreement requiring the City of Paterson to promote eligible police officers within 60 days of the occurrence of a vacancy is enforceable as a permissive subject of negotiation.

I

On May 5, 1978 the City of Paterson entered into a collective negotiation agreement with the Paterson Police PBA, Local 1, the exclusive representative of its police officers. The agreement applied retroactively and covered the period August 1, 1976 to July 31, 1978. Although the term of the agreement extended only about three months beyond its execution date, another clause of the agreement provided for its continuation during negotiations for a successor agreement.

The agreement required that the City maintain a current list of eligible candidates for positions within the police department, and section 12.2 of the agreement further provided:

The City shall fill any and all vacancies in the Table of Organization above the rank of Patrolman within sixty (60) days of the date a position becomes vacant, by the promotion of an eligible employee to a higher rank, according to existing Civil Service Rules, Regulations and Procedures. If the aforementioned list of eligibles is due to expire during the sixty (60) day period the appointment or promotion to the vacancy must be made before the expiration date of the eligibles list, unless said Civil Service eligible list is incomplete.

During 1978 one captain and several sergeant positions became vacant because of retirements or promotions. The City did not fill these vacancies within the 60 day period required by section 12.2. As a result, several police officers filed grievances

claiming a breach of the collective negotiation agreement by the City. The City denied the grievances and the parties proceeded to binding arbitration under the grievance procedure established by the agreement.

The arbitrator rendered his decision in November 1978. He found that two of the vacancies had been filled 72 days late [1] and the others remained unfilled at the time of the arbitration proceedings. Since he found that these facts constituted a violation of the promotion clause of the agreement, he awarded each grievant the difference in pay between the higher ranking position for which he was eligible and his actual salary for the period during which he remained unpromoted. The arbitrator did not order that any officers actually be promoted.

The City failed to comply with the arbitrator's award and the PBA Local filed a complaint in the Superior Court, Chancery Division, to confirm and enforce the award, *N.J.S.A.* 2A:24–7. Because the City contested the propriety of the promotion clause as a subject of collective negotiations, the trial court, following the procedures we approved in *Ridgefield Park, supra,* 78 *N.J.* at 153–55, refrained from passing on the merits of that issue and instead referred the case to the Public Employment Relations Commission (PERC) for a scope of negotiations ruling in accordance with *N.J.S.A.* 34:13A–5.4(d).

PERC issued its decision in August 1979, ruling that the filling of vacancies by promotion within a designated time is not a mandatory subject of negotiations but that it is a permissive subject. A necessary corollary of PERC's holding was that a permissive category of negotiable subjects exists for police officers and firefighters. Since the City had agreed to include this

---

[1]Although several of the positions had been vacant for months before May 5, 1978, the date of the agreement, the arbitrator construed section 12.2 to require that these positions be filled by July 5, 1978, 60 days after the date of the agreement. The record before us reveals no objection by the PBA Local that section 12.2 was not applied retroactively to require promotions within 60 days of the date a past vacancy occurred.

permissive subject within the collective negotiation agreement, the promotion clause was enforceable and subject to the grievance procedure, including binding arbitration, established by the agreement. PERC No. 80–16, 5 *NJPER* ¶ 10189 (1979).

The City appealed PERC's ruling to the Appellate Division, arguing that under *N.J.S.A.* 34:13A–16(b) and –16(f)(4) parties may submit permissive subjects to factfinding or arbitration after impasse has been reached but may not negotiate or agree to them prior to impasse. The City further argued that since the parties had not reached impasse during the negotiations, they could not legally agree to a permissive item. The Appellate Division rejected this argument, agreeing with PERC that permissive subjects are available for negotiation and voluntary agreement by the parties. The court also adopted PERC's characterization of the permissive category as encompassing all subjects not contravening any specific statutory mandate to the public employer. Finally, the court held that the promotion clause in dispute in this case comes within the permissive category and is therefore enforceable if included in the agreement.

We granted the City's petition for certification, 85 N.J. 144 (1980), and at the same time invited the participation of various *amici curiae* to address the issues presented by PERC's ruling below, as approved by the Appellate Division.

## II

In *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n*, 64 *N.J.* 17 (1973), this Court first considered the issue of what subjects public employers must negotiate with the representatives of their employees pursuant to the Employer-Employee Relations Act, *L.* 1968, *c.* 303 (codified at *N.J.S.A.* 34:13A–1 to –21). There we defined the category of mandatorily negotiable subjects, designated "terms and conditions of employment" by the statute, *N.J.S.A.* 34:13A–5.3, as "those matters which intimately and directly affect the work and welfare of [public] employees,"

and that can be negotiated "without any significant interference with management's ... responsibilities." 64 *N.J.* at 25. *See Bd. of Ed. of Englewood v. Englewood Teachers Ass'n*, 64 *N.J.* 1, 7 (1973).

Following legislative amendments of the statute, *L.* 1974, *c.* 123, we again considered the scope of negotiations for public employment and essentially reiterated the *Dunellen* definition of mandatory subjects. In *State v. State Supervisory Employees Ass'n*, 78 *N.J.* 54 (1978), we said:

> [N]egotiable terms and conditions of employment are those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy. [*Id.* at 67]

This definition is now entrenched in our public employment relations law. *E. g., Woodstown-Pilesgrove, supra*, 81 *N.J.* at 591; *Bd. of Ed. of Bernards Tp. v. Bernards Tp. Ed. Ass'n*, 79 *N.J.* 311, 320 (1979); *State v. Local 195, IFPTE*, 179 *N.J.Super.* 146 (App.Div.1981).

A second category, designated management prerogatives, was distinguished from the terms and conditions of employment. Employee organizations could not compel their public employers to negotiate with respect to subjects falling within this second category. In addition, *State Supervisory Employees, supra*, made it clear that the parties may not negotiate and reach an enforceable agreement as to any matter that is fixed or controlled by a specific statute or regulation. 78 *N.J.* at 80–81.

▮ Together with *State Supervisory Employees*, we decided *Ridgefield Park, supra*. There we held, contrary to earlier decisions of PERC, *e. g., In re Bridgewater-Raritan Regional Bd. of Ed.*, PERC No. 77–21, 3 *NJPER* 23 (1976); *In re Bd. of Ed. of Trenton*, PERC No. 77–24, 2 *NJPER* 351 (1976), that there are only two categories of subjects under the generally applicable sections of the Employer-Employee Relations Act, *N.J.S.A.* 34:13A–5.3, –8.1: "mandatorily negotiable terms and conditions of employment and non-negotiable matters of governmental

policy." 78 *N.J.* at 162. As a general rule, a public employer may not relinquish any of its management prerogatives and bind itself even voluntarily to an enforceable agreement on subjects that are not mandatorily negotiable.

At the same time, *Ridgefield Park* specifically recognized that the act as applicable to police and firefighters calls for a different conclusion. The different treatment of these particular public employees is due to *L.* 1977, *c.* 85, *N.J.S.A.* 34:13A–14 to –21, which was made applicable only to police and firefighters, *N.J.S.A.* 34:13A–14. As stated in *Ridgefield Park*, the statute

> provides for compulsory and binding "interest" arbitration of impasses in contract negotiations between local, county and state governments and policemen and firemen. That statute expressly contemplates a permissive category of negotiation .... It represents a specific decision on the part of the Legislature to authorize permissive negotiations with respect to police and firemen. [78 *N.J.* at 158]

Two specific statutory provisions led to the above conclusion. First, *N.J.S.A.* 34:13A–16(b) provides in part:

> Factfindings shall be limited to those issues that are within the required scope of negotiations unless the parties to the factfinding agree to factfinding on *permissive subjects of negotiation.* [emphasis added]

A second subsection, *N.J.S.A.* 34:13A–16(f)(4), provides:

> Arbitration shall be limited to those subjects that are within the required scope of collective negotiations, except that the parties may agree to submit to arbitration one or more *permissive subjects of negotiation.* [emphasis added]

The City of Paterson contends that since reference to permissive subjects is made only in these subsections providing for factfinding and interest arbitration, the agreement may include a permissive term only when impasse has been reached in the negotiations and after factfinding or arbitration has been invoked. PERC correctly rejected this contention.

The Legislature could not have intended to preclude the parties themselves from negotiating and reaching agreement with respect to subjects that could be included in the agreement through factfinding or arbitration. The City's interpretation of the statute would provide an incentive for the employees not to reach agreement on mandatory subjects, thus bringing about

impasse and opening the door on the permissive category of subjects. At least by implication, *N.J.S.A.* 34:13A–16(b) and –16(f)(4) acknowledge that the parties may bilaterally negotiate and agree upon permissive subjects.

The distinguishing feature of the permissive category is that neither party is *required* to negotiate with respect to any such subject. The employees may propose an item from the permissive category, but the employer may simply refuse to discuss that subject at any time before an agreement is reached. The employees may not insist on that item to the point of impasse or pursue interest arbitration with regard to the item unless the employer consents. *See In re City of Newark and Superior Officers' Ass'n*, PERC No. 81–27, 6 *NJPER* ¶ 11222 (1980). If an agreement is reached with respect to a permissive item, however, or if such an item is included in the parties' agreement pursuant to interest arbitration, then the item is a valid and enforceable term of the agreement subject to the dispute resolution procedures of the agreement. On this question we fully agree with PERC's consistent characterization of the permissive category. *See In re City of Paterson*, PERC No. 80–16, 5 *NJPER* ¶ 10189 (1979); *In re City of Newark and I.A.F.F., Local 1860*, PERC No. 80–111, 6 *NJPER* ¶ 11068 (1980); *In re State of New Jersey and State Troopers NCO Ass'n*, PERC No. 79–68, 5 *NJPER* ¶ 10089 at p. 162 (1979); *In re Bridgewater-Raritan Regional Bd. of Ed., supra*, 3 *NJPER* at 24.

Also, a permissive item remains in effect only during the term of the agreement. The public employer is free to delete any permissive item from a successor agreement by refusing to negotiate with respect to that item. Its inclusion in an existing agreement does not convert such an item into a mandatory subject. *In re City of Newark and I.A.F.F., Local 1860, supra.*

Our agreement with PERC's characterization of the permissive category does not mean, however, that we also agree with PERC's definition of the scope of permissive negotiation. We consider that question next.

## III

PERC's prior rulings delineating the breadth of the permissive category have implicitly favored a definition coterminous with the category of subjects that are management prerogatives. Thus, PERC's definition allows public employers to negotiate with police officers and firefighters with respect to all matters that are not specifically controlled by statutes or regulations. *In re Jersey City and Jersey City PBA*, PERC No. 80–159, 6 *NJPER* ¶ 11175 at p. 351 n.2 (1980); *see In re City of Newark and I.A.F.F., Local 1860*, PERC No. 81–96, 7 *NJPER* ¶ 12057 (1981) (criteria for promotions and specific assignments); *In re City of Newark and Superior Officers' Ass'n*, PERC No. 81–27, 6 *NJPER* ¶ 11222 (1980) (table of organization and manning provisions); *In re Borough of Edgewater*, PERC No. 80–123, 6 *NJPER* ¶ 11096 (1980) (minimum manning provision); *In re Cty. of Middlesex and PBA Local 152*, PERC No. 79–80, 5 *NJPER* ¶ 10111 (1979) (grievances over managerial decisions; department vehicles to be used by employees); *In re City of Perth Amboy*, PERC No. 79–86, 5 *NJPER* ¶ 10117 (1979) (minimum manning provision); *In re City of Trenton and PBA Local 11*, PERC No. 79–56, 5 *NJPER* ¶ 10065 (1979) (determination of daily police uniform); *In re Tp. of Mt. Holly*, PERC No. 79–51, 5 *NJPER* ¶ 10050 (1979) (minimum manning provision); *In re Bridgewater-Raritan Regional Bd. of Ed., supra* (decision not to renew contract of non-tenured teacher).[2]

The Appellate Division in this case agreed with PERC's broad definition of the permissive category, stating "[s]ince the provision did not directly contravene any specific statutory mandate, we believe it falls within the range of topics capable of permissive negotiation."

---

[2]Although PERC's ruling in *Bridgewater-Raritan* is no longer valid authority after our holding in *Ridgefield Park, supra*, PERC has expressly held that the *Bridgewater-Raritan* analysis of permissive negotiations still applies to police and firefighter negotiations. *In re Borough of Roselle*, PERC No. 80–137, 6 *NJPER* ¶ 11120 at p. 248 n.6 (1980); *In re City of Paterson*, PERC No. 80–16, 5 *NJPER* ¶ 10189 at p. 371 n.6 (1979).

The source of this wide-ranging conception of permissive negotiations is apparently federal labor law precedents applying the Labor Management Relations Act, 29 *U.S.C.A.* § 141 *et seq.* (1973). In *NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 *U.S.* 342, 78 *S.Ct.* 718, 2 *L.Ed.2d* 823 (1958), the Supreme Court distinguished between subjects with respect to which the parties to labor negotiations are obligated to bargain in good faith and those with respect to which no such obligation arises. As to the latter category the Court stated that "each party is free to bargain or not to bargain, and to agree or not to agree." *Id.* at 349, 78 *S.Ct.* at 722. A similarly broad "permissive" area of negotiation has been adopted by various state courts construing public employment bargaining statutes. *See School Comm. of Boston v. Boston Teachers Union*, 372 *Mass.* 605, 363 *N.E.2d* 485 (1977); *Detroit Police Officers Ass'n v. City of Detroit*, 391 *Mich.* 44, 214 *N.W.2d* 803 (1974); *Port Jefferson Station Teachers Ass'n v. Brookhaven-Comsewogue Union Sch. Dist.*, 45 *N.Y.* 2d 898, 383 *N.E.2d* 553, 411 *N.Y.S.2d* 1 (1978); *Bd. of Ed. of Philadelphia v. Phila. Fed. of Teachers*, 464 *Pa.* 92, 346 *A.2d* 35 (1975). *Amicus* State PBA urges that the definition of permissive subjects for public employees in New Jersey can only be the same as the controlling federal definition applicable to private employees. We disagree.

■ In *Ridgefield Park, supra*, we explained that federal labor relations precedents are not persuasive authority with respect to all matters concerning our Employer-Employee Relations Act. Specifically, we stated that "federal precedents concerning the scope of collective bargaining in the private sector are of little value in determining the permissible scope of negotiability in public employment labor relations in New Jersey." 78 *N.J.* at 159; *see id.* n.2. Differences between what a private employer is free to do and what a public employer may properly do result in different concepts of the scope of negotiations for each. *See Lullo v. Int'l Ass'n of Fire Fighters*, 55 *N.J.* 409, 436–41 (1970); C. Summers, *Public Employee Bargaining:*

*A Political Perspective*, 83 *Yale L.J.* 1156 (1974). As we stated in *Tp. of West Windsor v. PERC*, 78 *N.J.* 98 (1978),

[I]n the private sector the prerogatives of management are those of the private employer to share with its employees or retain exclusively as it sees fit. The powers of government may not be similarly surrendered to its employees. The determination of governmental policy at the negotiating table or in a grievance resolution proceeding is inherently antithetical to our system of government. Only with respect to those matters as to which government acts as an employer are the interests of public employees sufficient to warrant the slight deviation from the political process resulting from mandatory collective negotiation. [Id. at 115]

We decline to adopt the federal definition of permissive subjects.

In our previous collective negotiation decisions, we placed limitations on the scope of negotiations because of our understanding of the Legislature's intent in enacting the Employer-Employee Relations Act and because of our constitutional concerns regarding our democratic system of government. *Dunellen, supra; Ridgefield Park, supra; West Windsor, supra; State Supervisory Employees, supra.* The same understanding and concerns compel us to define the permissive category more narrowly than did PERC and the Appellate Division below.

In *Woodstown-Pilesgrove, supra,* a case involving teacher negotiations, we recognized that the two opposing categories, mandatory subjects of negotiation and management prerogatives, are not separated by a clear line. Most decisions of the public employer affect terms and conditions of employment to some extent and most negotiated items included in an agreement influence the exercise of *management prerogatives to some extent.* 81 *N.J.* at 589. To resolve the question of negotiability, a weighing or balancing of the disputed item must be made. Where an express or inherent management prerogative is the dominant factor, the subject is not negotiable.[3] On

___

[3]Not even the impact of such a subject on employment conditions is negotiable under the general provisions of the Employer-Employee Relations Act. *Woodstown-Pilesgrove, supra,* 81 *N.J.* at 591 & 590 n.2. It may be, however, that such impacts are permissively negotiable for police and fire-fighters if they satisfy the definition of that category we establish today.

the other hand, where terms and conditions of employment are dominant, the matter is mandatorily negotiable.

For police and firefighters the permissive category must be carved somewhere out of this balance. By providing for a permissive category, where it is the employer's option to negotiate, the Legislature must have intended to give police and firefighters more subjects of potential negotiation than those that are mandatorily negotiable for other public employees. Therefore, the permissive category must be a part of the management prerogatives side of the balance.

■ In the public sector, however, certain matters predominantly involving the exercise of management prerogative have been entrusted to the exclusive discretion of the government and, accordingly, the public employer may not even voluntarily include them in the negotiated agreement. Significant matters of governmental policy must remain outside the scope of negotiations, where citizen participation will not be precluded. *See Ridgefield Park, supra,* 78 *N.J.* at 163.

■ Thus, a scope of negotiations analysis for police and firefighters should follow these steps. First, it must be determined whether the particular item in dispute is controlled by a specific statute or regulation. If it is, the parties may not include an inconsistent term in their agreement. *State Supervisory Employees, supra,* 78 *N.J.* at 81. If an item is not mandated by statute or regulation but is within the general discretionary powers of a public employer, the next step is to determine whether it is a term or condition of employment as we have defined that phrase. An item that intimately and directly affects the work and welfare of police and firefighters, like any other public employees, and on which negotiated agreement would not significantly interfere with the exercise of inherent or express management prerogatives is mandatorily negotiable. *Woodstown-Pilesgrove, supra,* 81 *N.J.* at 591. In a case involving police and firefighters, if an item is not mandatorily negotiable, one last determination must be made. If it places substan-

tial limitations on government's policy-making powers, the item must always remain within managerial prerogatives and cannot be bargained away. However, if these governmental powers remain essentially unfettered by agreement on that item, then it is permissively negotiable.

Only case-by-case determinations will give further meaning and substance to these principles. *See Bd. of Ed. of Englewood v. Englewood Teachers Ass'n, supra,* 64 *N.J.* at 7. We believe PERC and our courts are capable of making such determinations as individual cases arise. These tribunals should understand, however, that the category of permissive subjects we have delineated is not broad. Certainly it is much narrower than PERC has assumed in the past. In applying the balancing approach we describe here, *supra* at 91–92, and in *Woodstown-Pilesgrove, supra,* 81 *N.J.* at 589, PERC will find items that neither affect *intimately and directly* the work and welfare of police and firefighters nor *substantially limit* governmental policy-making powers. While these items are normally non-negotiable because they fall outside the definition of "terms and conditions of employment," *see supra* at 86, they may be permissively negotiated by police officers and firefighters.

Finally, we do not agree with the State PBA's characterization of this further division of negotiation categories as unnecessary and unwise. The purpose of a permissive category is to provide greater flexibility for police and firefighter negotiations. At the same time, collective negotiations cannot be permitted to defeat the public's right to participate in the making of governmental policy, or to bypass the predominant duty of public employers to promote the public welfare. Our narrow definition of permissive subjects takes into account both these interests.

With this understanding of the permissive category, we proceed to consider the City's constitutional objections.

## IV

The City and *amicus* New Jersey School Boards Association argue that the existence of any permissive category of subjects for negotiation is unconstitutional. They base this argument on our statements in *Ridgefield Park, supra,* suggesting that a permissive category in collective negotiations may create problems for our democratic system of government. *See* 78 *N.J.* at 162–66. In that case, however, we expressly stated that we were not "prejudging the constitutionality of the concept of permissive negotiation *per se.*" *Id.* at 166.

We are satisfied that a permissive category of subjects is not unconstitutional *per se.* Especially as we define the category today, permissive negotiations do not violate principles of substantive due process by delegating governmental policy-making power to private individuals.

The applicable standard has been set forth previously. "To be constitutionally sustainable, a delegation must be narrowly limited, reasonable, and surrounded with stringent safeguards to protect against the possibility of arbitrary or self-serving action detrimental to third parties or the public good generally." *Ridgefield Park, supra,* 78 *N.J.* at 164; *see Group Health Insurance v. Howell,* 40 *N.J.* 436, 445 (1963), after remand, 43 *N.J.* 104 (1964); *New Jersey Dept. of Transp. v. Brzoska,* 139 *N.J.Super.* 510, 513 (App.Div.1976).

In *Division 540, Amalgamated Transit Union v. Mercer Cty. Improvement Auth.,* 76 *N.J.* 245 (1978), a public employer challenged the constitutionality of a statute providing for compulsory interest arbitration of labor disputes between a county improvement authority and its employees. We held that compulsory and binding arbitration of such public employment decisions did not constitute an unlawful delegation of power to the arbitrator. *Id.* at 251. We further held that the arbitrator's decision must be guided by standards inherent in the arbitration process as established by statute and case law. *Id.* at 252. This requirement overcame the employer's objection that no stan-

dards had been provided specifically by the arbitration statute to safeguard against arbitrary or self-serving action. Finally, we held that the arbitrator's decision was subject to judicial review to ensure that it had complied with proper legal standards and was supported by substantial credible evidence. *Id.* at 253–54.

While the situation in this case differs from *Division 540* in that the issue of constitutionality here concerns permissive rather than mandatory subjects of negotiation, the unlawful delegation analysis of *Division 540* is applicable, at least so long as the permissive category does not encroach intolerably into governmental policy-making authority. *See Kearny PBA Local 21 v. Town of Kearny*, 81 *N.J.* 208, 217 (1979).

As we define it today, the permissive category of negotiable subjects is narrowly limited. Furthermore, because of the potential risks of labor strife involving police or fire services, we cannot say that the Legislature unreasonably decided to delegate to alternative decision-making processes, such as arbitration or voluntary negotiation, some matters of interest to police officers and firefighters besides those that are strictly within the mandatorily negotiable category. If the parties cannot agree on these matters, the public employer need not consent to submit them to factfinding or arbitration. If it does submit them to interest arbitration, however, the arbitrator must make his decision "giving due weight" to the list of factors in the statute, including "the interests and welfare of the public," "the lawful authority of the employer," and "the financial impact on the governing unit, its residents and taxpayers." *N.J.S.A.* 34:13A–16(g). Also, he must take into account other factors related to the public welfare, such as a public employer's obligation to comply with the Local Government Cap Law, *N.J.S.A.* 40A:4–45.1 to –45.5. *Kearny PBA, supra,* 81 *N.J.* at 216; *New Jersey State PBA v. Town of Irvington,* 80 *N.J.* 271, 293 (1979); *Atlantic City v. Laezza,* 80 *N.J.* 255, 268–69 (1979). These safeguards assure that the delegation of authority to an arbitrator or to the parties engaged in the negotiation process does not

become arbitrary or self-serving. Finally, where the safeguards have not worked adequately, judicial review is available to protect the public welfare. *N.J.S.A.* 34:13A–20; *see Division 540, supra.*

Since a permissive category of negotiable subjects is not necessarily an unlawful delegation of government authority, it is not *per se* unconstitutional. Other jurisdictions considering this question have also allowed permissive negotiations. *See, e.g., School Comm. of Boston v. Boston Teachers Union, supra; Detroit Police Officers Ass'n v. City of Detroit, supra; Board of Ed. of Yonkers v. Yonkers Fed. of Teachers,* 40 *N.Y.*2d 268, 353 *N.E.*2d 569, 386 *N.Y.S.*2d 657 (1976); *Springfield Ed. Ass'n v. Springfield Sch. Dist.,* 24 *Or.App.* 751, 547 *P.*2d 647, mod. on other grounds, 25 *Or.App.* 407, 549 *P.*2d 1141 (1976); *see also* Annot. 68 *A.L.R.*3d 885 (1976).

Since permissive negotiation is not unconstitutional, we need only consider whether the promotion clause in the parties' agreement comes within the definition of that category as established in this opinion.

## V

 Applying our scope of negotiations analysis to the present case, we find first that the promotion clause is not precluded from negotiation by any specific statutory or regulatory mandate. Although several statutes, *N.J.S.A.* 40:69A–29, –43(d), and 40A:14–143, are relevant to a municipality's control of the organization of its police force, each confers general powers upon the municipality rather than mandates specific courses of action. *N.J.S.A.* 40:69A–29(a) gives a municipality the power to "organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to ... fix their term, tenure and compensation." *N.J.S.A.* 40:69A–43(d) gives department heads the power to appoint

subordinate officers. We agree with the Appellate Division that neither of these provisions is the kind of specific statutory mandate prohibiting collective negotiation. Nor does the promotion clause of the agreement contravene any specific directive to the City found in *N.J.S.A.* 40A:14–143. This last statute is relevant in another respect, however, which we shall discuss presently.

The next step of the scope of negotiations inquiry is easily resolved. Nobody in this case disputes PERC's holding that the promotion clause of the agreement is not a mandatorily negotiable term or condition of employment and instead falls within the range of management prerogatives. Consequently, we must proceed to the final step of the inquiry and determine whether the promotion clause places substantial limitations on government's policy-making powers and thus is the kind of management prerogative that may not be permissively negotiated.

We have stated previously that:

> Municipal officials retain discretion to diminish the size of the work force and limit the areas in which personnel will be deployed, inasmuch as these decisions 'unquestionably [are] predominantly managerial function[s]' which cannot be delegated to an arbitrator not accountable to the public at large. [*Altantic City v. Laezza, supra*, 80 *N.J.* at 267]

*Accord New Jersey State PBA v. Town of Irvington, supra*, 80 *N.J.* at 288–89; *Irvington PBA v. Town of Irvington*, 170 *N.J.Super.* 539 (App.Div.1979), certif. den., 82 *N.J.* 296 (1980). The promotion clause of this agreement deprives the City of this discretion to diminish the police force or to deploy officers as it deems best. At least for the duration of the agreement, the City is precluded from leaving positions in the police department vacant.

The statutory provision referred to earlier provides further evidence of the discretionary function entrusted to the local governmental body. *N.J.S.A.* 40A:14–143 provides in part: "The governing body of any municipality, if they shall deem it

necessary for reasons of economy, may decrease the number of members and officers of the police department or force or their grades or ranks." *Id.* Although the statute does not refer directly to filling of vacancies by promotion, it reveals a clear legislative intent to vest discretion in a municipality to demote or lay-off police officers for economic reasons. Obviously, a municipality should also retain the discretion to forgo for economic reasons the filling of vacancies by promotions.

Municipal decisions about how to organize and deploy their police forces to comply with economic needs are unquestionably policy decisions and affect the public welfare. The requirement of this collective negotiations agreement that all vacancies be filled within 60 days, or sooner in some instances, places substantial limitations on the City's policy-making authority. During the term of the agreement the City is compelled to promote officers even if such promotions are determined to be unnecessary and the economic well-being of the City is at stake. Yet the statute expressly gives the City discretion to make decisions to lay-off or demote police officers for economic reasons. The restraints on the City's discretionary powers, expressly derived from the statute and inherent in our system of government, are too severe to allow the public employer to bind itself to such an agreement. We hold that the subject matter of section 12.2, the promotion clause of this agreement, was not permissively negotiable.

Accordingly, the clause is unenforceable as outside the scope of negotiations. The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—None.