185 N.J. Super. 269 (1982)
448 A.2d 487
TEANECK BOARD OF EDUCATION, PETITIONER-APPELLANT,
v.
TEANECK TEACHERS ASSOCIATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1982.
Decided June 28, 1982.
*272 Before Judges McELROY and J.H. COLEMAN.
James P. Granello argued the cause for appellant (Murray, Granello & Kenney, attorneys; James P. Granello of counsel; Robert T. Lawless on the brief).
Sheldon H. Pincus argued the cause for respondent (Bucceri & Pincus, attorneys; Sheldon H. Pincus of counsel; Gregory T. Syrek on the brief).
Robert E. Anderson, Jr., Deputy General Counsel, argued the cause for Public Employment Relations Commission (Sidney H. Lehmann, General Counsel, attorney; Robert E. Anderson on the brief).
The opinion of the court was delivered by J.H. COLEMAN, J.A.D.
This case raises the novel question of whether the subject matter of racial discrimination falls within the scope of collective negotiations with a public employer. The Teaneck Board of Education (Board) contends that the grievance pertains to a subject matter outside the legal scope of negotiations, and hence was not arbitrable. The Public Employment Relations Commission (PERC) held that racial discrimination is negotiable and that a grievance alleging racial discrimination can be resolved through binding arbitration as part of the contractual grievance procedure permitted under the New Jersey Employer-Employee Relations Act (act), N.J.S.A. 34:13A-1 et seq. We disagree and reverse.
The facts germane to this decision are not in dispute. On November 1, 1979 the principal of Teaneck High School recommended *273 that Kevin Salters be appointed assistant basketball coach instead of Peter Zubiaurre. The Board, which is the public employer herein, appointed Salters to the position. The Teaneck Teachers Association (Association) filed a grievance on December 13, 1979 on behalf of Zubiaurre alleging reverse discrimination. Salters is black and Zubiaurre is white. The grievance was found to be unsubstantiated at the first three levels in the grievance procedure outlined in Article IV of the collective negotiations agreement between the Board and the Association.[1] The Association then filed with PERC a request for arbitration to resolve the grievance pursuant to the binding arbitration clause in the collective negotiations agreement. The parties selected John M. Malkin as the arbitrator.
The Board contended before the arbitrator that the question of racial discrimination in appointment decisions was neither contractually arbitrable nor within the scope of negotiations. The arbitrator disagreed and found that the matter of racial discrimination was contractually arbitrable because the collective bargaining agreement incorporated federal and state statutes prohibiting racial discrimination in employment.
The Board then filed a Petition for Scope Negotiation Determinations with PERC pursuant to N.J.S.A. 34:13A-5.4(d) seeking a determination that the subject of racial discrimination is nonnegotiable and nonarbitrable. On October 5, 1981 PERC issued its decision holding that the grievance in this case is within the scope of collective negotiations and is arbitrable.
In its decision PERC stated:
Accordingly, the Commission concludes that the issue upon which we must pass judgment concerns the arbitrability of a grievance alleging racial discrimination in the appointment of an assistant basketball coach.
After thoroughly reviewing the briefs of both parties, the Commission finds that a grievance alleging racial discrimination as the cause for which an individual has not been appointed to a particular position is a matter within the *274 scope of negotiations. In re Fairview Board of Education, P.E.R.C. No. 79-34, 5 NJPER 28 (¶ 10019 1978). In that decision, it was stated that, "It cannot be denied that, although people do not have a right to employment, they do have a right to be considered for employment and retention on a basis devoid of considerations of race, sex, color, religion, etc." Fairview at page 9.... A decision to improperly deny an employee an appointment because of race is not one based on a major educational policy and therefore the submission of that single question to an arbitrator could not interfere with the determination of governmental policy. The right to be considered for a position free from unlawful discrimination is a term and condition of employment and a grievance alleging such discrimination is arbitrable if otherwise arbitrable under the parties' agreement.
........
In view of the above, and pursuant to N.J.S.A. 34:13A-5.4(d), the Commission hereby determines that the instant matter in dispute is within the scope of collective negotiations. Accordingly, it may be submitted to arbitration.

I. Scope of Negotiation

The focal point in a scope of negotiations determination is whether or not a particular subject matter is negotiable. Here, that subject matter is racial discrimination. To determine whether the subject matter is negotiable, there must be a balancing of the interest of the public employer and that of the public employees within the meaning of principles later discussed. The role of the court is to "balance the competing interests by considering the extent to which the collective negotiations will impair the determination of governmental policy." In re IFPTE Local 195 v. State, 88 N.J. 393, 402 (1982). See, also, Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17, 25 (1973).
Conceptually, there are three categories of negotiating subjects: (1) mandatory, (2) permissive or voluntary, and (3) illegal. Mandatory subjects are those which the employer must negotiate if requested by the employees' representative. Permissive or voluntary subjects are those which the parties may negotiate if they do not place substantial limitations on government's policy-making powers. Finally, illegal subjects are those which the parties are forbidden to negotiate because the subject matter is controlled by other statutes or regulations that permit of no discretion on the part of the employer. The illegal *275 subjects are sometimes said to be topics preempted by other statutes or regulations:
For a full history of public employment scope of negotiations law in New Jersey, see In the Matter of Paterson Police PBA Local No. 1 v. Paterson, 87 N.J. 78 (1981); Bd. of Ed. of Woodstown-Pilesgrove v. Woodstown-Pilesgrove Ed. Ass'n, 81 N.J. 582 (1980); State v. State Supervisory Employees Ass'n, 78 N.J. 54 (1978); Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978); Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17 (1973). See also Carlson (Note), "Public Sector Labor Relations: The New Jersey Supreme Court Interprets the 1974 Amendments to the Employer-Employee Relations Act," 32 Rutgers L.Rev. 62 (1979); Moore (Comment), "After Ridgefield Park and State Supervisory Employees: The Scope of Collective Negotiations in the Public Sector in New Jersey," 10 Seton Hall L.Rev. 558 (1980). [In re IFPTE Local 195 v. State, 88 N.J. at 403, n. 10]
See, also, Gidding (Comment), "In re Paterson Police Benevolent Association: The New Jersey Supreme Court Fails to Solve the Lingering Problem of Permissive Bargaining in the Public Sector," 34 Rutg.L.Rev. 378 (1982).
A subject matter is negotiable only if three considerations coalesce. Those considerations are (1) the subject must intimately and directly affect the work and welfare of public employees; (2) a subject which intimately and directly affects the work and welfare of public employees must not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy, and (3) the subject must not have been preempted by statute or regulation.
Our Supreme Court recently explained the three part-test for scope of negotiations determinations. In In re IFPTE Local 195 v. State, supra, it was observed:
........
First, a subject is negotiable only if it "intimately and directly affect[s] the work and welfare of public employees...." In re Paterson Police PBA, 87 N.J. at 86; Bd. of Ed. of Woodstown-Pilesgrove v. Woodstown-Pilesgrove Ed. Ass'n, supra, 81 N.J. at 591; State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 67. The prime examples of subjects that fall within this category are rates of pay and working hours. Bd. of Ed. of Woodstown-Pilesgrove v. Woodstown-Pilesgrove Ed. Ass'n, supra, 81 N.J. at 589. Any subject which does not satisfy this part of the test is not negotiable.
Second, an item is not negotiable if it has been preempted by statute or regulation. If the Legislature establishes a specific term or condition of employment *276 that leaves no room for discretionary action, then negotiation on that term is fully preempted. If the statute sets a minimum or maximum term or condition, then negotiation may be confined within the parameters established by these limits. State v. State Supervisory Employees Ass'n, 78 N.J. at 80-82; N.J.S.A. 34:13A-8.1. However, the mere existence of a statute or regulation relating to a given term or condition of employment does not automatically preclude negotiations. Negotiation is preempted only if the "statutory or regulatory provisions ... speak in the imperative and leave nothing to the discretion of the public employer." State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 80.
Third, a topic that affects the work and welfare of public employees is negotiable only if it is a matter "on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy." In re Paterson Police PBA, 87 N.J. at 86; Woodstown-Pilesgrove, 81 N.J. at 591; State v. State Supervisory Employees Ass'n, 78 N.J. at 67 (emphasis added in Woodstown-Pilesgrove). This principle rests on the assumption that most decisions of the public employer affect the work and welfare of public employees to some extent and that negotiation will always impinge to some extent on the determination of governmental policy. In re Paterson Police PBA, 87 N.J. at 91-92. The requirement that the interference be "significant" is designed to effect a balance between the interests of public employees and the requirements of democratic decision making. As Justice Schreiber wrote in Woodstown-Pilesgrove,

The nature of the terms and conditions of employment must be considered in relation to the extent of their interference with managerial prerogatives. A weighing or balancing must be made. When the dominant issue is [a governmental] goal, there is no obligation to negotiate and subject the matter, including its impact, to binding arbitration. Thus these matters may not be included in the negotiations and in the binding arbitration process even though they may affect or impact upon the employees' terms and conditions of employment. [81 N.J. at 591] [88 N.J. at 403-404]
The Legislature has decreed that there shall be no racial discrimination in the employment of public employees. See N.J.S.A. 10:5-12 and N.J.S.A. 34:13A-5.4 a(3). These statutes speak in the imperative and leave nothing to the discretion of the employer. When a specific statute sets a term or condition of employment, any negotiation in contravention of that statute is illegal. Red Bk. Reg'l Ed. Ass'n v. Red Bk. Reg'l High Sch. Bd. of Ed., 78 N.J. 122, 141 (1978). The inability of the parties to agree to contravene statutory or regulatory imperatives pertaining to the terms and conditions of employment precludes negotiability. State v. State Supervisory Employees Ass'n, 78 N.J. 54, 80 (1978). This is so because these other *277 statutes or regulations which fix nonnegotiable terms and conditions of public employment are expressions of public policy. "Matters of public policy are properly decided, not by negotiations and arbitration, but by the political process." In re IFPTE Local 195 v. State, supra, 88 N.J. at 402. In this same connection, Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978), stated that
... the very foundation of representative democracy would be endangered if decisions on significant matters of governmental policy were left to the process of collective negotiations ... Our democratic system demands that governmental bodies retain their accountability to the citizenry. [at 163]
We agree with the Board that racial discrimination is an illegal subject for negotiations. This topic is covered by other statutes and the parties may not agree on any terms which deviate from the standards specified in the other statutes. State Supervisory Employees, supra, 78 N.J. at 81.
We also agree with PERC's determination in other matters that the educational judgments involved in the selection of personnel to perform coaching and assistant coaching duties cannot be questioned through binding arbitration. See In re Pascack Valley Reg'l H.S. Dist. Bd. of Ed., 3 NJPER 114 (1977); In re Mainland Reg'l Bd. of Ed., 5 NJPER 301 (¶ 10162 1979), aff'd App.Div., 176 N.J. Super. 476 (11/20/80); cf. Ramapo-Indian Hills H.S. Dist. Bd. of Ed., 5 NJPER 302 (¶ 10163 1979), aff'd 176 N.J. Super. 35 (App.Div. 1980). This is so even though the selection of a coach or an assistant coach intimately and directly affects the work and welfare of public employees. The decision as to who should be selected involves the Board's prerogatives to deploy personnel in the manner which it considers most likely to achieve its educational objectives. In such circumstances, negotiations on hiring an assistant basketball coach would significantly interfere with inherent managerial prerogatives and are therefore nonnegotiable.

II. Scope of Arbitrability

The scope of arbitrability is coextensive with the scope of negotiability. If the subject matter is nonnegotiable it is also *278 nonarbitrable. Ridgefield Park Ed. Ass'n, supra, 78 N.J. at 160. We do not read W. Windsor Tp. v. Public Employment Rel. Comm'n, 78 N.J. 98, 116-117 (1978), as requiring binding arbitration of a grievance related to a subject that is nonnegotiable because of preemption by other statutes or regulations. Even if W. Windsor Tp. is read to hold that grievability might be more expansive than negotiability, we do not believe that decision can be interpreted to allow binding arbitration of a preempted or illegal subject.
Additionally, see discussion in Alexander v. Gardner-Denver Co., 415 U.S. 36, 56-58, 94 S.Ct. 1011, 1023-24, 39 L.Ed. 2d 147 (1974), for further reasons why complaints of racial discrimination in employment should not be heard by arbitrators.

III. Transfer of Action

Simply because we have determined that the subject of racial discrimination is nonarbitrable, that does not mean Mr. Zubiaurre cannot pursue his grievance before another tribunal. Even though we hold that his grievance is not subject to binding arbitration, he is nonetheless free to pursue his grievance before PERC pursuant to N.J.S.A. 34:13A-5.4 a(3) and 5.4 c. as an unfair labor practice. He can also pursue the grievance before the Division on Civil Rights or the Law Division pursuant to N.J.S.A. 10:5-1 et seq. We further recognize that the Commissioner of Education, Division of Controversies and Disputes, also has jurisdiction to hear the grievance. See N.J.S.A. 18A:6-9 and N.J.A.C. 6:4-1.6. Since the controversy involved is multi-faceted, Hackensack v. Winner, 82 N.J. 1 (1980); Hinfey v. Matawan Reg'l Bd. of Ed., 77 N.J. 514 (1978); Gray v. Serruto Builders, Inc., 110 N.J. Super. 297 (Ch.Div. 1970), should be considered before selecting a tribunal. Even though we are not required by this appeal to decide which forum would be the most appropriate, we nonetheless lean towards the Commissioner of Education.
*279 We are aware that if Zubiaurre is compelled to file a new grievance or petition to invoke the jurisdiction of one of the previously mentioned tribunals, he will be confronted with a problem of late filing. To avoid such a problem, we direct that on remand the grievance filed herein may be transferred pursuant to R. 1:13-4(a). The grievant is allowed 30 days after the issuance of this opinion to notify PERC of the name of the tribunal to which he wants the grievance transferred.

Summary
In the light of these principles, we are satisfied that PERC erred for two reasons. First, the subject matter falls into the preempted or illegal category for negotiations. Second, the selection of an assistant basketball coach is plainly a topic of essential inherent managerial prerogatives which has been delegated by our Legislature to the public employer and is not subject to either negotiations or arbitration. Consequently, the decision of PERC is reversed and the matter is remanded to PERC to permit grievant Zubiaurre to apply within 30 days for a transfer under R. 1:13-4(a), if he so desires. We do not retain jurisdiction.
Reversed and remanded.
NOTES
[1] The three levels consisted of hearings by the (a) (high school principal, (b) superintendent of schools and (c) board of education. The fourth level involves binding arbitration.