**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2430-24

IN THE MATTER OF RUTGERS,
THE STATE UNIVERSITY OF
NEW JERSEY,

      Petitioner-Appellant,

and

INTERNATIONAL
BROTHERHOOD OF
TEAMSTERS LOCAL 97,

      Respondent-Respondent.

_____

PUBLIC EMPLOYMENT
RELATIONS COMMISSION,

      Respondent.

_____

Argued April 28, 2026 – Decided June 24, 2026

Before Judges Gilson and Firko.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2025-009.

James P. Lidon argued the cause for appellant (McElroy Deutsch Mulvaney & Carpenter LLP, attorneys; John J. Peirano, of counsel and on the briefs; James P. Lidon, on the briefs).

James M. Mets argued the cause for respondent International Brotherhood of Teamsters Local 97 (Mets Schiro & Manetta, LLP, attorneys; James M. Mets, of counsel and on the brief; Brian J. Manetta and Joanna Sowa, on the brief).

Frank C. Kanther, Deputy General Counsel, argued the cause for respondent Public Employment Relations Commission (Christine Lucarelli-Carneiro, General Counsel, attorney; Frank C. Kanther, of counsel and on the brief).

PER CURIAM

Rutgers, the State University of New Jersey (Rutgers) appeals from a February 27, 2025 final agency decision by the Public Employment Relations Commission (Commission), which denied Rutgers' scope of negotiation petition seeking to restrain binding arbitration of a grievance. Discerning no error of law and nothing arbitrary, capricious, or unreasonable in the Commission's decision, we affirm.

I.

Rutgers is an instrumentality of the State of New Jersey and operates the State University, as well as various health care facilities. In 2017, Rutgers adopted an Immunization Policy requiring vaccination for certain

communicable diseases, including influenza (the Vaccine Policy). The Vaccine Policy is consistent with New Jersey law, which provides that "each health care facility shall establish and implement an annual influenza vaccination program." N.J.S.A. 26:2H-18.79.

The Vaccine Policy requires "Covered Individuals" to be vaccinated and provide proof of the vaccination. "Covered Individuals" includes individuals working in areas where patients receive care. Administrative and service staff are expressly included in the definition of "Covered Individuals." The Vaccine Policy allows for two exemptions: a medical exemption, or a religious exemption. To obtain an exemption, a Covered Individual must complete and submit a request before November 1 of the year for which they are seeking the exemption.

"Covered Individuals" who do not receive an exemption must "provide proof of Seasonal Influenza vaccination prior to the start date of Flu Season[,]" which begins each year on November 1. Any Covered Individual who fails to provide proof of vaccination and who is not exempted, "will not be permitted to work in a Patient Care Area and will be subject to discipline, up to and including termination."

Rosemary Herrschaft (grievant) worked as a secretary at Rutgers' John H. Cronin Dental Center. Rutgers maintains that grievant, as an employee working in a health care area, was covered by the Vaccine Policy. In January 2023, Rutgers notified grievant that she had failed to upload proof of seasonal influenza vaccination for the 2022-2023 flu season. Rutgers therefore directed grievant to upload the proof immediately. In response, grievant applied for a religious exemption to the vaccine requirement. Rutgers did not adjudicate the exemption request before the end of the 2022-2023 flu season and, therefore, no action was taken that year. Grievant was notified that she would need to be vaccinated before the next flu season.

In October 2023, grievant reapplied for a religious exemption to the vaccine requirement. In her letter, grievant requested an exemption as a "baptized Catholic." Grievant acknowledged that the Catholic Church "does not prohibit the use of any vaccine, and generally encourages the use of safe and effective vaccines as a way of safeguarding personal and public health[.]" Nevertheless, grievant asserted that she had a moral right to refuse "a medical intervention, including a vaccination, if [her] informed conscience comes to this sure judgment."

A-2430-24

On December 13, 2023, Rutgers notified grievant that her religious exemption had been denied. The notice also directed grievant to obtain the vaccine and demonstrate proof of vaccination within seven days.

On January 2, 2024, Rutgers issued a counseling notice to grievant because she had not provided proof of the seasonal influenza vaccination. The notice stated that grievant's actions violated the Vaccine Policy and her non-compliance would result in discipline, up to and including termination. On January 25, 2024, the University sent grievant a pre-termination notice advising her that there would be a conference to discuss the reasons for her non-compliance with the Vaccine Policy and the possibility of the termination of her employment.

The pre-termination conference was conducted on January 31, 2024, and grievant attended. After considering grievant's request for an exemption from the Vaccine Policy and her contention that the Policy did not apply to her position, Rutgers rejected the request and argument. Thereafter, on March 1, 2024, Rutgers notified grievant she was terminated from employment.

That same day, the International Brotherhood of Teamsters Local 97 (the Union) filed a grievance contesting grievant's termination. The Union is a labor organization that represents certain health care workers employed by Rutgers,

A-2430-24

including the grievant.  Rutgers and the Union have a collective negotiation agreement (CNA).

The CNA includes grievance procedures and allows for grievances of "[a] claimed violation, misinterpretation, or misapplication of rules or regulations, existing policy, or orders of [Rutgers] affecting the terms and conditions of employment."[1]  Those procedures also state that a staff member's claim of unjust discipline is governed by the grievance procedures and discipline is defined to include "dismissal from service[.]"

The CNA provides a two-step grievance process.  Step one requires a written submission of the grievance to Rutgers' Office of Labor Relations, a hearing, and a decision.  If a grievant is not satisfied with the decision after step one, and the grievance involves a material issue such as dismissal, step two allows the grievant to request arbitration before a neutral arbitrator.

On May 1, 2024, the Union submitted a request for binding arbitration of the grievance to the Commission.  The Union sought to have an arbitrator selected to conduct binding arbitration of the disciplinary grievance.

---

[1]  The record on this appeal includes the CNA covering the period from July 1, 2018 through June 30, 2022.  No party disputes that the grievance procedures set forth in that CNA cover, possibly through extension, the Union's grievance on behalf of grievant.

On October 29, 2024, Rutgers filed a petition with the Commission for a scope of negotiation determination seeking to restrain binding arbitration of the grievance. In support of its petition, Rutgers submitted three certifications explaining the reason for its Vaccine Policy and why it believed the policy was not subject to binding arbitration. The Union opposed Rutgers' petition and submitted a certification in support of its opposition.

On February 27, 2025, the Commission issued its decision denying Rutgers' petition to restrain arbitration of the grievance. The Commission noted its review of a scope of negotiation petition is narrow; it addresses the single issue of "whether the subject matter in dispute is within the scope of collective negotiations." It then determined the grievant was challenging the discipline imposed; that is, grievant's termination. The Commission found that major discipline, like termination, was within the scope of the grievance procedures in the CNA between Rutgers and the Union. Accordingly, the Commission denied the petition because "[p]ursuant to N.J.S.A. 34:13A-5.3 of the New Jersey Employer-Employee Relations Act (Act), [N.J.S.A. 34:13A-1 to -73,] disciplinary review procedures are mandatorily negotiable and binding arbitration may be used as a means for resolving a dispute over a disciplinary determination."

A-2430-24

The Commission recognized that Rutgers was challenging the arbitration because it believed it had a managerial prerogative to implement its Vaccine Policy. In rejecting Rutgers' argument, the Commission found the Union was not seeking to challenge Rutgers' "managerial prerogative to implement a vaccination mandate . . . [r]ather, [the Union's] grievance seeks arbitral review to determine whether Rutgers had just cause for terminating the grievant based on her alleged non[-]compliance with its Vaccine Policy, specifically its influenza requirement."

The Commission also rejected Rutgers' reliance on our decision in In re City of Newark, 469 N.J. Super. 366 (App. Div. 2021). In that regard, the Commission reasoned that the facts in this case were distinguishable because in City of Newark, we allowed Newark to "swiftly impose a COVID-19 vaccination policy without negotiating over enforcement procedures" because those negotiations "would significantly interfere with its policy[-]making powers aimed at protecting the health and safety of its employees and the public." The Commission also reasoned that City of Newark was distinguishable because it involved a challenge to the implementation of the COVID-19 policy and did not preclude employees from challenging discipline imposed from violation of the policy.

Rutgers now appeals from the Commission's final decision. The parties have represented that pending this appeal the arbitration has been stayed.

II.

On appeal, Rutgers primarily argues that the Commission erred because the grievance effectively challenges its Vaccine Policy and arbitration would substantially interfere with Rutgers' managerial prerogative. Given the binding representations made by the Union, we reject that argument because the Union is not challenging the Vaccine Policy and its grievance is limited to challenging the discipline imposed.

The scope of our review of a final agency determination by the Commission is limited. In re Rutgers, the State Univ. v. AFSCME Loc. 888, 262 N.J. 523, 533 (2026); City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567 (1998). "In the absence of constitutional concerns or countervailing expressions of legislative intent, we apply a deferential standard of review to determinations made by [the Commission]." Jersey City, 154 N.J. at 567 (citing In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 329 (1989)). When a party appeals a scope-of-negotiation determination, we will not reverse the Commission's determination unless it was arbitrary, capricious, or unreasonable, the findings lacked support

in the evidence, or there was a violation of the Commission's legislative grant of authority. In re Herrmann, 192 N.J. 19, 27-28 (2007).

The Legislature has expressly authorized the Commission to determine whether a "matter in dispute is within the scope of collective negotiations." N.J.S.A. 34:13A-5.4(d); In re Rutgers, 262 N.J. at 533 (quoting In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 16 (2020)). Accordingly, we give appropriate deference to the Commission's expertise in public sector employer-employee relations. In re Hunterdon Cnty., 116 N.J. at 328.

"To be arbitrable, a matter must qualify as one on which the parties may negotiate. A matter which is not legally negotiable in the first place cannot be arbitrable." Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 160 (1978); see also Teaneck Bd. of Ed. v. Teaneck Tchrs. Ass'n, 94 N.J. 9, 14 (1983) (explaining "[t]he scope of arbitrability is generally co[-]extensive with the scope of negotiability"). To determine if a matter is negotiable, the Commission evaluates whether the subject matter is "mandatorily negotiable terms and conditions of employment, [or] non-negotiable matters of governmental policy." Old Bridge Bd. of Educ. v. Old Bridge Educ. Ass'n, 98 N.J. 523, 528 (1985) (quoting In re Loc. 195, 88 N.J. 393, 402 (1982)). A subject "that affects the work and welfare of public

employees is negotiable only if it is a matter 'on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy.'" In re Loc. 195, 88 N.J. at 404 (emphasis omitted) (quoting In re Paterson Police PBA Loc. No. 1 v. City of Paterson, 87 N.J. 78, 86 (1981)).

The New Jersey Supreme Court has set forth a test for determining whether a matter falls within the scope of negotiations:

> [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially pre[-]empted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.
>
> [Jersey City, 154 N.J. at 568 (first alteration in original) (quoting In re Loc. 195, 88 N.J. at 404-05).]

The principal issue presented on this appeal is whether the Commission erred in denying Rutgers' scope of negotiation petition because arbitration of the grievance would interfere with Rutgers' implementation of its Vaccine Policy.

11

The Commission found, and the Union concedes, the grievance is not challenging Rutgers' Vaccine Policy. Instead, the grievance is limited to challenging the scope of discipline imposed on grievant.

Rutgers argues that allowing an arbitrator to review its disciplinary decision would undercut its managerial prerogative to have a Vaccine Policy. The Commission rejected that argument because the Vaccine Policy itself states that failure to comply with the policy, can subject a covered employee to discipline, up to and including termination. Moreover, the Commission pointed out that the CNA between Rutgers and the Union expressly allowed grievances related to termination of employment.

We discern no error of law or an abuse of discretion in the Commission's reasoning. Major discipline, like termination, is subject to the grievance procedures in the CNA. A decision on a discipline to be imposed on a particular employee for violation of the Vaccine Policy, does not interfere with Rutgers' right to have and enforce its Vaccine Policy.

We also reject Rutgers' argument that the Commission failed to properly balance the interests of Rutgers and the grievant. The Commission expressly recognized that Rutgers has the managerial prerogative to have a Vaccine Policy. The grievant, a former employee, has a right under the CNA to challenge

12

her termination for failure to comply with the policy. Accordingly, the Commission appropriately balanced the interests in determining the scope of arbitration.

Finally, we reject Rutgers' argument that the Commission misconstrued and failed to follow our decision in City of Newark. In City of Newark, we were addressing public entities' right to implement a vaccine policy on an emergent basis in the middle of the COVID-19 pandemic. See 469 N.J. Super. at 379 (explaining "[w]hen a public health emergency exists, governmental entities, including local authorities, have a recognized right to require vaccinations"). Our decision recognized that negotiations in those circumstances would significantly interfere with a public employer's ability to set a policy. Id. at 384-85. Accordingly, in City of Newark we were focused on Newark's managerial prerogative to implement its COVID-19 vaccination mandate. Id. at 389. Because the Union has acknowledged that it is not challenging Rutgers' Vaccine Policy, our decision in City of Newark is not applicable to the limited issue in this matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13

A-2430-24