198 N.J. Super. 382 (1985)
487 A.2d 337
CITY OF ELIZABETH, PETITIONER-APPELLANT,
v.
ELIZABETH FIRE OFFICERS ASSN., LOCAL 2040, I.A.F.F., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1984.
Decided January 29, 1985.
*383 Before Judges FRITZ, GAULKIN and LONG.
Karen A. Bulsiewicz argued the cause for appellant (Murray & Granello, attorneys).
Bruce D. Leder argued the cause for respondent (Schneider, Cohen & Solomon, attorneys).
Robert E. Anderson, Jr. argued the cause for the Public Employment Relations Commission.
The opinion of the court was delivered by LONG, J.A.D.
*384 On this appeal, the City of Elizabeth (city) challenges a decision of the Public Employment Relations Commission (commission) which held that although the establishment of a sick leave verification policy is a non-negotiable managerial prerogative, the question of the cost of such verification is severable and subject to mandatory negotiation.
The case arose as follows: After the expiration of their 1982-83 agreement, the city and the Elizabeth Fire Officers Association (association) began negotiating for a successor contract.[1] In September 1983, the association filed a petition to initiate compulsory interest arbitration proceedings regarding the terms of the agreement. In October 1983, the city filed a petition for a scope of negotiations determination. More particularly, the city sought a declaration that the following underscored language from a previous contract with the association was outside the ambit of negotiations: "[t]he present sick leave plan pertaining to non-occupational injuries and illness shall continue in effect for the duration of this Agreement. No sick reports, however, shall be required for the first two (2) days." The association argued that sick leave verification is primarily an economic issue because it involves the cost of a physician's certificate and is therefore a term or condition of employment subject to negotiation. The city rejoined that management's need to verify sick leave use through physician's certificates outweighs any possible economic impact on employees and constitutes the kind of a governmental prerogative exempt from mandatory negotiation.[2]
*385 The commission agreed that the city was not obligated to negotiate the institution of a sick leave verification policy but held that the question of who pays for the doctor's visits is a severable, mandatorily negotiable issue. No challenge to the right of the city to institute the verification policy is advanced on this appeal. Only the negotiability of the economic question of who pays for verification is at issue here.
It is well established that a scope of negotiations determination such as this is a classic issue for the commission's primary jurisdiction (N.J.S.A. 34:13A-5.4(d)) and expertise, and that the commission's determination will be upheld unless it is contrary to law or arbitrary, unreasonable and capricious. State v. State Supervisory Employees Ass'n, 78 N.J. 54, 83-84 (1978); Plumbers & Steamfitters v. Woodbridge Bd. of Ed., 159 N.J. Super. 83, 86 (App.Div. 1978). Applying these standards, we are satisfied that the city's claim is without merit and that the commission's decision should be affirmed.
In In re IFPTE Local 195 v. State, 88 N.J. 393 (1982), the Supreme Court established a three pronged test for determining a scope of negotiations issue:
[A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. [88 N.J. at 404]
See also Bd. of Ed. of Woodstown-Pilesgrove v. Woodstown-Pilesgrove Ed. Ass'n, 81 N.J. 582 (1980); Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978); State v. State Supervisory Employees Ass'n, supra. In this case the city has properly conceded the first two elements established in Local 195, namely, that the issue intimately affects *386 the work and welfare of the employees and that negotiation is not preempted by statute or regulation. It is the third test with which the city undergirds its position here, advancing the argument that negotiation of the economics of a sick leave verification program would "significantly interfere with governmental policy."
We do not agree. It is clear that the finding of a connection between a managerial prerogative and an issue sought to be negotiated does not automatically bar negotiability. Indeed nearly every determination by management in the public sector will, in some measure, implicate the governmental policy making function. It is for this reason that in Local 195 the Supreme Court required the showing of a "significant" interference with managerial prerogative in order to preclude negotiation. 88 N.J. at 404. The Court went on to explicate the significant interference concept this way:
To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions. [88 N.J. at 404-405]
We think that the commission struck the proper balance in this case. By holding that the city had a managerial prerogative to require sick leave verification at any time, the commission protected the governing body's interest in identifying and dealing with sick leave abuse. By severing the question of who pays for the required doctors' reports, the commission protected the legitimate economic interests of employees in avoiding unnecessary financial obligations and in negotiating a full package of health care benefits. Together, these holdings accommodate the legitimate interests of management and labor without unduly interfering with managerial prerogative.
Indeed, the question of who pays for doctor's visits does not impinge on the exercise of the managerial function in any material way and merely involves budgetary issues. Contrary to the arguments of the city, nothing in the commission's *387 decision precludes implementation of a verification program until the economic issue is resolved. In fact, these issues are for all practical purposes entirely severable. That is what distinguishes this case from cases such as In re Maywood Board of Education, 168 N.J. Super. 45 (App.Div.), certif. den. 81 N.J. 792 (1979) and Irvington PBA Local # 29 v. Town of Irvington, 170 N.J. Super. 539 (App.Div. 1979), certif. den. 82 N.J. 296 (1980) which presented issues clearly within the contemplation of the "significant" interference test of Local 195. In Maywood the question was whether, in the face of a policy decision that a reduction in force was required, employees were entitled to negotiate questions of dismissal and the allocation of the dismissed employees' functions to others. In Irvington the question was whether the employees were entitled to negotiate a change in hours upon the exercise of the managerial prerogative to change shift assignments. In each of those cases the exercise of the policy making function caught all tangential issues in its net of non-negotiability. Indeed after those managerial policy decisions were made, there was nothing left to negotiate. On the contrary, the decision to institute a sick leave verification policy cannot be said to subsume the question of the cost of that verification.
Rather, the situation here is like that presented in Woodstown-Pilesgrove case where the schoolboard modified the school calendar to extend the workday before Thanksgiving from 1:00 to 3:00 p.m. The Supreme Court observed:
... [T]he budgetary consideration being the dominant element, it cannot be said that negotiation and binding arbitration of that matter significantly or substantially trenched upon the managerial prerogative of the Board of Education. See C.W. Summers, "Public Employee Bargaining: A Political Perspective," 83 Yale L.J. 1156, 1194 (1974). A somewhat comparable situation may be found in Englewood Bd. of Ed. v. Englewood Teachers Ass'n, 64 N.J. 1 (1973). Four special education teachers, employed to instruct retarded children, customarily worked between 8:45 a.m. and 1:30 p.m. Their working hours were lengthened an hour and a quarter each day. We held that their hours were clearly terms and conditions of employment and "items most evidently in the Legislative mind" to be subjected to collective bargaining. Id. at 7 [81 N.J. at 594]
*388 We view the situation in this case as falling rather clearly within the reasoning expressed in Woodstown-Pilesgrove. The kinds of facts justifying a bar against negotiability as established in Local 195 simply are not present here. Since we find no significant interference with the determination of governmental policy, there is no reason for us to interfere with a decision of the commission which we view as entirely correct.
Affirmed.
NOTES
[1] During 1982-83 the parties did not have a signed contract but operated under a continuation of the 1980-82 agreement with modifications adopted through interest arbitration proceedings.
[2] For the first time in its reply brief on this appeal, the city raises the question of whether the economics of the sick leave policy were in fact in issue before the commission. This untimely introduction of a new issue by way of reply brief is clearly improper. State v. Smith, 55 N.J. 476, 488 (1970). Although the city is not entitled to an adjudication of this claim, we have reviewed it and find it to be meritless. The record clearly supports the commission's finding  which is entitled to deference  that the economic matter was "in dispute" in the scope of negotiations proceeding.