NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3817-14T2

IN THE MATTER OF

CITY OF ATLANTIC CITY,

 Petitioner-Respondent/
 Cross-Appellant,

and

ATLANTIC CITY PROFESSIONAL
FIREFIGHTERS INTERNATIONAL
ASSOCIATION OF FIREFIGHTERS,
LOCAL NO. 198,

 Respondent-Appellant/
 Cross-Respondent.
_________________________________

 Submitted October 25, 2016 – Decided September 20, 2017

 Before Judges Messano and Espinosa.

 On appeal from the Public Employment Relations
 Commission, Docket No. 2015-051.

 O'Brien, Belland & Bushinsky, LLC, attorneys
 for appellant/cross-respondent (Mark E.
 Belland and David F. Watkins, Jr., on the
 briefs).

 Cleary, Giacobbe, Alfieri & Jacobs, LLC,
 attorneys for respondent/cross-appellant City
 of Atlantic City (Matthew J. Giacobbe and
 Gregory J. Franklin, of counsel and on the
 briefs).
 Robin T. McMahon, General Counsel, attorney
 for respondent New Jersey Public Employment
 Relations Commission (David N. Gambert, Deputy
 General Counsel, on the brief).

PER CURIAM

 Atlantic City Professional Fire Fighters IAFF Local 198 (the

Union) and the City of Atlantic City (the City) were parties to a

collective negotiations agreement (CNA) that expired on December

31, 2014. After the parties reached an impasse during negotiations

for a successor contract, the City filed a petition with the Public

Employment Relations Commission (PERC) to initiate compulsory

interest arbitration and later amended that petition to seek a

scope of negotiations determination.

 The petition targeted thirty-five provisions under seven

articles of the expired CNA, asking PERC to determine the

provisions were non-negotiable matters that could not be submitted

to interest arbitration. Following PERC's final decision, the

Union appeals, challenging PERC's determination that fourteen

provisions were not mandatorily negotiable. The City cross-

appeals, challenging PERC's determination that four of the

provisions were mandatorily negotiable. We affirm in part and

reverse in part.

 2 A-3817-14T2
 I.

 "[T]he scope of public employment negotiation is divided,

for purposes of analysis, into two categories of subject matter

comprised of mandatorily negotiable subjects and nonnegotiable

matters of governmental policy." Robbinsville Twp. Bd. of Educ.

v. Washington Twp. Educ. Ass'n, 227 N.J. 192, 198 (2016).

N.J.S.A. 34:13A-5.4(d) vests PERC with "primary jurisdiction"

for the determination "of whether the subject matter of a

particular dispute is within the scope of collective

negotiations." Ridgefield Park Educ. Ass'n. v. Ridgefield Park

Bd. of Educ., 78 N.J. 144, 154 (1978). If PERC determines that

a disputed subject matter is negotiable, "the matter may proceed

to arbitration." Ibid. In contrast, a matter will not be

arbitrable where PERC concludes the "particular dispute is not

within the scope of collective negotiations." Ibid. A party

that disagrees with PERC's decision regarding the scope of

negotiations may appeal to this court. N.J.S.A. 34:13A-5.4(d);

see Ridgefield, supra, 78 N.J. at 155.

 A three-part test is employed to determine when a subject is

negotiable between public employers and employees: "(1) the item

intimately and directly affects the work and welfare of public

employees; (2) the subject has not been fully or partially

preempted by statute or regulation; and (3) a negotiated agreement

 3 A-3817-14T2
would not significantly interfere with the determination of

governmental policy." City of Jersey City v. Jersey City Police

Officers Benevolent Ass'n, 154 N.J. 555, 568 (1998) (quoting In

re Local 195, IFPTE, 88 N.J. 393, 404-05 (1982). As to the last

of these criteria, "it is necessary to balance the interests of

the public employees and the public employer. When the dominant

concern is the government's managerial prerogative to determine

policy, a subject may not be included in collective negotiations

even though it may intimately affect employees' working

conditions." Ibid. (quoting IFPTE, supra, 88 N.J. at 404-05).

This test must be applied on a "case-by-case basis." Troy v.

Rutgers, 168 N.J. 354, 383 (2001).

 Substantial deference is accorded to PERC's exercise of its

authority in making a scope of negotiations determination. Twp.

of Franklin v. Franklin Twp. PBA Local 154, 424 N.J. Super. 369,

377 (App. Div. 2012); see City of Jersey City, supra, 154 N.J. at

567. PERC's decision regarding negotiability is to be upheld

unless "it was arbitrary, capricious or unreasonable"; "lacked

fair support in the evidence"; or "violated a legislative policy

expressed or implicit in the governing statute." Twp. of Franklin,

424 N.J. Super. at 377 (quoting Commc'ns Workers of Am., Local

1034 v. N.J. State Policemen's Benev. Ass'n, Local 203, 412 N.J.

Super. 286, 291 (App. Div. 2010)).

 4 A-3817-14T2
 II.

 We first address the Union's challenges to PERCs findings

that certain provisions could not be submitted to interest

arbitration because they were not mandatorily negotiable.

 A.

 Article 2.C, "Interpretation," provides a general statement

of what categories of issues the City agrees the Union has the

right to negotiate:

 The City agrees that the Union has the right
 to negotiate as to rates of pay, hours of work,
 fringe benefits, working conditions, safety or
 personnel and equipment, procedures for
 adjustment of disputes and grievances and all
 other related matters.

 PERC found "personnel and equipment" was not mandatorily

negotiable "because these provisions refer to manning and staffing

levels of personnel as well as the purchase and use of equipment."

The Union argues that PERC erred in finding the disputed language

was not mandatorily negotiable because it "directly implicates

matters of employee safety."

 The Union's argument fails because the disputed language

concerns issues separate from "safety." When that language is

deleted from the text, PERC's decision leaves the following intact:

"The City agrees that the Union has the right to negotiate as to

. . . safety . . . ."

 5 A-3817-14T2
 PERC interpreted the disputed language as concerning only

manning and staffing levels of personnel, issues that fall within

the inherent power and authority of public employers. See Jersey

City, supra, 154 N.J. at 571-73; Paterson Police PBA Local No. 1

v. City of Paterson, 87 N.J. 78, 97(1981); see also In re North

Hudson Reg'l Fire and Rescue, P.E.R.C No. 2000-78, 26 NJPER 31,075

(2000) (a public employer is "not required to negotiate about

overall staffing levels . . . even when staffing decisions may

affect employee safety").

 Similarly, an employer may make unilateral decisions

regarding the purchase of equipment unless it directly relates to

employee safety. See In re Twp. of Union, P.E.R.C. No. 87-119,

13 NJPER P18,121 (1987) ("The negotiability of a demand for

equipment turns upon whether the item is predominately concerned

with employee safety or comfort rather than the method and means

of delivering police services to the community which is a non-

negotiable governmental policy determination."); see, e.g., In re

Borough of Ringwood, P.E.R.C. No. 87-118, 13 NJPER P18,120 (1987)

(holding a contract proposal that pertained to type and quantity

of ammunition to be supplied to police officers was not mandatorily

negotiable, because it pertained to matters of governmental

policy); In re Twp. of South Brunswick, P.E.R.C. No. 86-115, 12

NJPER P17,138 (1986) (finding that employer's decision "to equip

 6 A-3817-14T2
police vehicles or officers with certain specified guns, other

weapons and quantities of ammunition" was not mandatorily

negotiable because it was "more closely related to matters of

governmental policy than employee safety").

 In sum, PERC's decision that "personnel and equipment" in 2.C

pertains to the managerial prerogatives of manning and staffing

levels, and the purchasing of equipment is not arbitrary,

capricious or unreasonable.

 B.

 The next provisions at issue are Article 16, "Leaves," and

Article 17, "Vacations."

 Article 16.C.1 states:

 In the event that an employee suffers an
 illness or injury in the line of duty, in the
 course of employment, or as a result of
 his/her employment, he/she shall be
 compensated at full pay for a period not to
 exceed one (1) year. A Medical Review Board
 shall be created for the purpose of examining
 all matters pertaining to sick and/or injured
 members of the Atlantic City Fire Department.
 Any employee may be required to present to
 this Board a doctor's certificate to the
 effect that the illness or injury specified
 above required extended convalescence.

 [(Emphasis added).]

 Article 17.D states:

 A maximum of four (4) vacation days may be
 converted to sick days per week with approval
 of the Medical Review Board. All personnel

 7 A-3817-14T2
 who are in the negative shall be docked pay
 for sick time unless they are convalescing
 from a sickness approved by the Medical Review
 Board.

 [(Emphasis added).]

 The City argued the first sentence of Article 17.D was not

negotiable because it was preempted by N.J.S.A. 11A:6-3(e). It

has not appealed, however, from PERC's determination that the

issue may be submitted to interest arbitration.

 PERC determined the underlined portions of 16.C.1 and 17.D

were not mandatorily negotiable because "[s]ick leave verification

sis a managerial prerogative." The Union acknowledges that sick

leave verification is a non-negotiable managerial prerogative but

contends it is only a "narrow managerial prerogative." The Union

casts 16C.1 and 17D as involving the "application of a verification

policy [which] is subject to negotiation" and does not involve the

City's abdication of any managerial rights.

 PERC noted the distinction between the establishment of a

verification policy, which is the prerogative of the employer, In

re Piscataway Twp. Bd. of Educ. & Piscataway Twp. Educ. Ass'n,

P.E.R.C. No. 82-64, 8 NJPER 95 (1982), and issues involving the

application of those policies, which may be subject to contractual

grievance policies. Ibid.

 8 A-3817-14T2
 PERC concluded the underlined portion of Article 16.C.1

impinged on the City's managerial prerogative regarding the

verification of sick leave because "it delegates that authority

to a joint employer/employee committee," and concluded the

underlined language in Article 17D was also not mandatorily

negotiable because it had a similar impact on the City's managerial

prerogative to verify sick leave.

 By its plain language, Article 16.C.1 "create[s]" a Medical

Review Board "for the purpose of examining all matters pertaining

to sick and/or injured members of the Atlantic City Fire

Department." It was, therefore, not arbitrary or unreasonable for

PERC to conclude that the breadth of this delegation "impinge[d]

on the City's managerial prerogative to verify sick leave since

it delegates that authority to a joint employer/employee

committee."

 The following sentence of Article 16.C.1, which states an

employee "may be required" to present a doctor's certificate to

the Board to justify "extended convalescence" further supports the

conclusion that the Medical Review Board would play a role in

verifying sick leave that lies within the employer's prerogative.

The methods the City can utilize to implement its policy are also

non-negotiable. See e.g., Piscataway Twp. Bd. of Educ., supra

(ruling that public employer "has a managerial right to utilize

 9 A-3817-14T2
reasonable means to verify employee illness or disability"). The

fact that there is an existing procedure with the stated purpose

to regulate and monitor the use of sick leave does not, as the

Union contends, render PERC's conclusion unreasonable.

 Moreover, the disputed language does not concern issues that

would be subject to interest arbitration such as the allocation

of the cost for providing necessary documentation, see Elizabeth

v. Elizabeth Fire Officers Assn., Local 2040, etc., 198 N.J. Super.

382, 386-87 (App. Div. 1985), or a grievance and disciplinary

procedure related to the use of sick leave.

 The disputed language in 17.D conditions a determination

regarding sick leave upon approval by the Medical Review Board.

Accordingly, PERC's determination that the language "impact[s] on

the City's managerial prerogative to verify sick leave" is not

arbitrary, capricious or unreasonable.

 C.

 Article 16.F, "Terminal Leave Options," states in pertinent

part:

 Terminal leave shall be amended to provide for
 a maximum monetary payment as follows:

 . . . .

 (d) Employees hired after October 16, 2006,
 but before January 1, 2012, shall have maximum
 accumulation time of six (6) months;

 10 A-3817-14T2
 (e) Employees hired after January 1, 2012
 will receive a maximum payout cap of
 $15,000.00.

 [(Emphasis added).]

 The issue regarding this provision is whether it is preempted

by N.J.S.A. 11A:6-19.2, which establishes a cap on compensation

for unused sick leave under Title 11A.

 Unless preempted by a statute or regulation, vacation and

sick leave are mandatorily negotiable subjects. In re Howell Twp.

Bd. of Educ., P.E.R.C No. 2015-58, 41 NJPER P131 (2015).

"Negotiation on terms and conditions of employment will be

preempted by a statute or regulation if the provision addresses

the particular term or condition 'in the imperative and leave[s]

nothing to the discretion of the public employer.'" Old Bridge

Bd. of Educ. v. Old Bridge Educ. Ass'n., 98 N.J. 523, 529 (1985)

(quoting IFPTE, supra, 88 N.J. at 403-04).

 The cap established by N.J.S.A. 11A:6-19.2 applies to

employees who commence service on or after May 21, 2010.1 N.J.S.A.

1
 N.J.S.A. 11A:6-19.2 states:

 Notwithstanding any law, rule or regulation
 to the contrary, a political subdivision of
 the State, or an agency, authority or
 instrumentality thereof, that has adopted the
 provisions of Title 11A of the New Jersey
 Statutes, shall not pay supplemental
 compensation to any officer or employee for

 11 A-3817-14T2
11A:6-19.2 does not, however, "affect the terms in any collective

negotiations agreement with a relevant provision in force on that

effective date."

 PERC found Article 16.F.3(e) was preempted by N.J.S.A. 11A:6-

19.2 because it "effectively allows employees hired on or after

May 21, 2010 through January 1, 2012 to be paid for accumulated

sick leave in excess of $15,000 in contravention of N.J.S.A. 11A:6-

19.2." This reasoning ignores the proviso that the statute is not

to affect the terms of a CNA in force on its effective date.

Because the CNA in force on May 21, 2010 did not expire until

December 31, 2012, the exclusion of employees who commenced service

during the interim period from May 21, 2010 through December 31,

2012 was sanctioned by N.J.S.A. 11A:6-19.2. We therefore conclude

 accumulated unused sick leave in an amount in
 excess of $15,000. Supplemental compensation
 shall be payable only at the time of
 retirement from a State-administered or
 locally-administered retirement system based
 on the leave credited on the date of
 retirement. This provision shall apply only
 to officers and employees who commence service
 with the political subdivision of the State,
 or the agency, authority or instrumentality
 thereof, on or after the effective date [May
 21, 2010] of P.L.2010, c.3. This section
 shall not be construed to affect the terms in
 any collective negotiations agreement with a
 relevant provision in force on that effective
 date.

 [N.J.S.A. 11A:6-19.2 (emphasis added).]

 12 A-3817-14T2
that PERC erred in its interpretation of the law and that Article

16.F(3)(e) is mandatorily negotiable.

 D.

 Article 18, "Acting Out Of Title," includes the following:

 18.A.2(d) In the absence of an existing Civil
 Service list, the senior person who is
 qualified shall be placed in the vacancy for
 ninety (90) working days and receive the pay
 at the higher rank. After these ninety (90)
 working days, the next senior person with
 qualifications shall replace that person and
 the same conditions will prevail. In the
 event of a two-part promotional examination,
 in which an interim list is issued, only
 personnel on the interim list will be deemed
 "qualified" to act out-of-title in the higher
 position. Aa9-13, 82.

 18.A.2(g) When a promotional vacancy is
 created due to the terminal leave provision,
 and where there is an existing promotional
 list, such promotion shall be made within
 fifteen (15) consecutive days of the vacancy.
 In the event there is no existing list,
 Section [A].2(d) will prevail. Aa83.

 [(Emphasis added).]

 PERC found the underlined sentences of 18.A.2(d) and all of

18.A.2(g) were not mandatorily negotiable because "both require

the City to fill a promotional vacancy," which is a managerial

prerogative. The Union contends these provisions are mandatorily

negotiable because "nothing in the CNA infringes on the City's

right to determine when to fill a vacancy or select promotional

 13 A-3817-14T2
criteria," and the provisions at issue address procedural rather

than substantive matters. (emphasis in original). We disagree.

 A public employer has a non-negotiable, managerial

prerogative to determine the manning levels necessary for the

efficient delivery of governmental services. Irvington PBA Local

29 v. Town of Irvington, 170 N.J. Super. 539 (App. Div. 1979),

certif. den. 82 N.J. 296 (1982); see also, Jersey City, supra, 154

N.J. at 571-73; Paterson, supra, 87 N.J. at 97. This managerial

prerogative includes the right to decide not to staff a position.

See, e.g., In re City of Long Branch, P.E.R.C No. 83-15, 8 NJPER

P13,211 (1982). PERC's conclusion that these provisions tread

upon the City's managerial prerogative is reasonable and will not

be disturbed.

 E.

 The Union challenges PERC's determinations regarding several

provisions of Article 23, "Transfers and Assignments."

 23.A. Transfers and assignments shall provide
 the highest degree of efficiency in every unit
 of the Fire Department by assigning a
 combination of experienced and less
 experienced personnel. Whenever possible,
 each unit shall consist of the following
 balance:
 One (1) Company Officer
 One (1) Senior Firefighter
 Two (2) Journeymen Firefighters
 One (1) Apprentice Firefighter.

 [(Emphasis added).]

 14 A-3817-14T2
 PERC determined 23.A was not mandatorily negotiable based on

the principle that "staffing and manning levels are a managerial

prerogative." The Union contends that as a result of the

qualifying language "whenever possible," the provision does "not

restrict the City's ability to direct staffing in any way." In

addition, the Union asserts "[t]his clause speaks to the safety

goals . . . and operations of the department."

 In short, the provision states "each unit shall consist of"

a specific balance "whenever possible." It sets a specific

standard that would deprive the City of its discretion to direct

staffing, allowing for the limited exception when to do so is not

possible. The provision thus establishes a presumptive staffing

level, which conflicts with the City's managerial prerogative.

The exception affords no remedy for this because the presumptive

requirement remains. Even if "whenever possible" were considered

to have some ameliorative effect, it ultimately fails to do so

because that question is not left to the sole discretion of the

City.

 "Public employers are not required to negotiate about

overall staffing levels or how many firefighters or fire officers

will be on duty at a particular time, even where staffing decisions

may effect [sic] employee safety." In re City of Plainfield,

 15 A-3817-14T2
P.E.R.C No. 2015-40, 41 NJPER P91 (2014). Therefore, the argument

that this provision "speaks to . . . safety goals" fails to remove

this provision from the City's prerogative to determine its minimum

staffing levels. PERC correctly determined that Article 23.A is

not mandatorily negotiable.

 23.C. A higher seniority vacancy may be
 covered by a firefighter with a lower service
 time. However, a lower seniority vacancy may
 not be covered by a firefighter with a higher
 service time. Exception: Journeyman
 firefighters may cover when no apprentice is
 available.

 In determining that 23.C was also not mandatorily negotiable,

PERC reasoned that "the filling of vacancies," "[t]ransfers and

reassignments" are all non-negotiable managerial prerogatives.

Aa8. The Union argues 23.C pertains to the procedures for

transfers and reassignments, and thus is a negotiable matter.

 Contrary to the Union's argument, 23.C pertains to

substantive policy determinations rather than mere procedures.

The consideration of seniority in making temporary assignments has

been found to "relate[] to the substantive criteria for

reassignment." IFPTE, supra, 88 N.J. at 418. This provision

limits the City in its decision to transfer and assign its

employees by restricting what firefighter can provide coverage for

another firefighter based on seniority. Therefore, PERC correctly

found that 23.C was not mandatorily negotiable.

 16 A-3817-14T2
 Paragraph 23.J addresses "Posting Procedure and Selection

Criteria."

 23.J.1. When a vacancy or new position occurs
 within the bargaining unit, it shall be filled
 temporarily by the Chief of the Department.
 The City shall immediately post notices on the
 bulletin boards in all fire stations setting
 forth the classification, job duties and
 requirements, hours and days of work, starting
 time and wage rate of the job to be filled
 permanently. Employees desiring to apply for
 the job shall make application to the Chief
 of the Department setting forth their
 qualifications, seniority, etc. Copies of
 these applications and of the notices are to
 be filed with the Secretary of the Union.
 Notices shall remain posted for ten (10) days.
 Employees who do not make application within
 the period of the posting shall have no right
 to consideration for the job, with the
 exception that employees (who) are not at work
 during the entire posting period and who have
 sufficient qualifications and seniority shall
 be considered for the job. Aa95-96; Aa4-5.

 23.J.2. In filling vacancies by promotion or
 transfer, where ability and other
 qualifications are equal, seniority within the
 Fire Department shall control. The term
 "ability and other qualifications" used herein
 shall include observing the rules and
 regulations of the Fire Department. The Chief
 of the Department shall define and determine
 the standards of "ability and other
 qualifications," which cannot be arbitrarily
 or selectively established. Aa96.

 23.J.4. The Chief of the Department may deny
 placement of an applicant possessing ability
 and other qualifications to the vacant or new
 position, should the Chief of the Department
 determine, exercise bona fide discretion, that

 17 A-3817-14T2
 such individual is needed more in the position
 already assigned.

 [(Emphasis added).]

 The Union argues that PERC erred in finding the underlined

sections of 23.J.1, 23.J.2, and 23.J.4 were not mandatorily

negotiable because they "relate to transfer procedures and do not

improperly restrict the City's ability to make personnel

decisions."

 PERC determined that the first sentence of 23.J.1 was not

mandatorily negotiable because "[a]n employer cannot be required

to fill a vacant or new position since it is a managerial

prerogative." PERC reasoned the language "shall be filled"

requires the employer to make temporary appointments to fill

vacancies. The Union contends this provision "does not restrict

the ability of the Fire Chief to determine when to fill a

position."

 As previously discussed, "[t]he decision whether to fill a

vacant position is a governmental policy one. Thus, an agreement

that forces an employer to fill a vacant position substantially

limits that governmental policymaking determination." In re City

of Atlantic City, P.E.R.C No. 2001-56, 27 NJPER P32,061 (2001).

PERC has consistently held that a union is not permitted "to

 18 A-3817-14T2
enforce an agreement to fill a vacant position should the employer

decide not to do so." Ibid.

 Contrary to the Union's argument, the first sentence of 23.J.1

requires that a vacancy or new position "shall" be filled "[w]hen"

it occurs without any limitation. It thus encroaches upon

managerial prerogatives not to fill such positions and is not

mandatorily negotiable.

 PERC determined the third sentence in 23.J.2 and all of 23.J.4

concerned "criteria for selection" that were managerial

prerogatives. Specifically, PERC found the language "which cannot

be arbitrarily or selectively established" in 23.J.2 allowed the

criteria established by the employer to be second-guessed by an

arbitrator. PERC found that 23.J.4 similarly "infringe[d] on the

managerial prerogative to make assignments under particular

circumstances by limiting them to situations in which the Chief

exercises 'bona fide discretion.'"

 PERC's reasoning and conclusions are sound and will not be

disturbed.

 F.

 The Union challenges PERC's determinations regarding three

provisions of Article 24, "Health and Safety."

 24.A. The general safety and health for
 members of the Atlantic City Fire Department
 is the responsibility of the Chief of the

 19 A-3817-14T2
 Department. The Joint Labor/Management Safety
 and Health Advisory Committee shall have the
 responsibility for making recommendations on
 safety and health matters impacting members
 of the Atlantic City Fire Department. Such
 safety and health consideration shall include
 protective equipment and technological
 innovations. The Committee shall meet at the
 call of the Chairman, or upon majority vote
 of its members, but at least quarterly.

 PERC determined the second sentence of 24.A was mandatorily

negotiable because it concerns recommendations regarding health

and safety and that the third sentence of 24.A was not mandatorily

negotiable because it "involves the potential purchase and use of

certain equipment." The Union argues PERC erred because the

language only grants the Joint Labor/Management Safety and Health

Advisory Committee the responsibility to make recommendations; it

does not vest the Committee with binding authority regarding the

purchase and use of equipment.

 Provisions regarding specific equipment "predominantly

related to employee safety or comfort" are mandatorily negotiable.

In re Cty. of Union (Union County), P.E.R.C No. 84-23, 9 NJPER

P14,248 (1983). In finding that 24.A was not mandatorily

negotiable, PERC relied on its decision in Union County where it

found a proposed provision that established a "Police Department

Safety Committee," and vested it with binding authority on issues

 20 A-3817-14T2
that included the purchase of equipment was not mandatorily

negotiable.

 The provision at issue here does not endow the Joint

Labor/Management Safety and Health Advisory Committee with

authority to make the decision, let alone binding authority. The

responsibilities are clearly delineated. The Committee is tasked

with "the responsibility for making recommendations on safety and

health matters," including "protective equipment and technological

innovations." But the authority to make decisions regarding the

"general safety and health for members of the Atlantic City Fire

Department" resides with the Chief of the Department. As a result,

we conclude PERC's reliance upon its decision in Union County is

misplaced and that it erred in finding this provision was not

mandatorily negotiable.

 24.F. The City pledges to do whatever is
 economically feasible regarding increased
 staffing levels to ensure continued safe fire
 protection of its citizens and a continued
 safe working environment for members of the
 bargaining unit.

 PERC found 24.F was not mandatorily negotiable because it

"refers to 'safety manning standards' and requires the City to

make a 'pledge' to do 'whatever is economically feasible regarding

increased staffing levels.'" The Union argues 24.F was mandatorily

negotiable because it "concerns a non-binding safety pledge

 21 A-3817-14T2
undertaken by the City regarding increased staffing levels." It

asserts a "non-binding pledge does not impose a significant

limitation on the City's managerial prerogative to make staffing

decisions."

 The Union attempts to cast the pledge "to do whatever is

economically feasible" as merely aspirational. We disagree. The

statement establishes a presumptive standard "regarding increased

staffing" that is external to the City's exercise of its discretion

in staffing and therefore impinges upon the City's managerial

prerogative. PERC's conclusion that the subject was not

mandatorily negotiable was, therefore, not arbitrary, capricious

or unreasonable.

 24.G. First level supervisors shall be trained
 by the Department at a level equal to or better
 than standards described in N.F.P.A. Standard
 No. 1021 Fire Officer.

 PERC found this provision improperly "mandates the level of

training the City must provide to its employees," because training

has long been recognized as a managerial prerogative. PERC

concluded that 24.G "improperly infringes upon the City's

managerial prerogative to set the training standards for its

employees." The Union argues 24.G is mandatorily negotiable

because it "does not seek to set the baseline training

 22 A-3817-14T2
requirement," and instead "seeks greater training than that

required."

 A public employer has the prerogative to require employee

training, In re Twp. of Lower, P.E.R.C No. 2014-74, 40 NJPER P167

(2014), and to "decide which employees will be trained, how they

will be trained, and how long they will be trained." In re City

of Orange Twp., P.E.R.C No. 2005-31, 30 NJPER P151 (2004). In

contrast, a matter is negotiable "to the extent it concerns course

work separate from and in addition to the employer's mandatory

training courses." Ibid. For example, "additional compensation

for education or training that is not a job requirement is

mandatorily negotiable." In re Twp. of Teaneck, P.E.R.C No. 2000-

33, 25 NJPER P30,199 (1999).

 24.G sets forth the basic standard for how first level

supervisors will be trained (i.e., at minimum, equal to the

identified standard). It does not "address[] additional training

above the mandated requirement," as the Union contends. Because

24.G infringes upon the employer's managerial prerogative to

decide how to train its employees, PERC correctly found that this

provision was not mandatorily negotiable.

 III.

 In its cross-appeal, the City challenges PERC's

determinations regarding several provisions of Article 18, "Acting

 23 A-3817-14T2
out of Title," contending PERC erred in finding that the following

provisions were mandatorily negotiable: 18.A.2; 18.A.2(c);

18.A.2(d) (underlined sentence); and 18.B.2(f) (underlined

sentences).

 18.A.2. Regulations for Class A: In the
 event an employee is assigned to act out-of-
 title, he/she shall be selected from an
 existing promotional list of eligible
 employees. If no existing list is current,
 such employee shall be selected from the rank
 next preceding the vacated position. . . .

 18.A.2(c) If there is an existing Civil
 Service list the higher rank, the number one
 person on the list shall be placed in the
 vacancy.

 18.A.2(d) In the absence of an existing Civil
 Service list, the senior person who is
 qualified shall be placed in the vacancy for
 ninety (90) working days and receive the pay
 at the higher rank. After these ninety (90)
 working days, the next senior person with
 qualifications shall replace that person and
 the same conditions will prevail. In the
 event of a two-part promotional examination,
 in which an interim list is issued, only
 personnel on the interim list will be deemed
 "qualified" to act out-of-title in the higher
 position.

 18.B.2(f) In the event of a promotional list,
 only personnel on the list will act out-of-
 title in the higher position. In the even
 [sic] there is no individual on the list
 permanently assigned to a Company, pursuant
 to Civil Service Commission Regulations,
 personnel on the list will be reassigned to
 perform the acting out-of-title work. If
 there is no promotional list, then the acting
 out-of-title position will be performed by a

 24 A-3817-14T2
 journeyman assigned by seniority. At the
 company level, the acting out-of-title
 position will be rotated on a four (4) day
 working basis. In the even [sic] of a two-
 part promotional examination, in which an
 interim list is issued, only personnel on the
 interim list will be deemed "qualified" to act
 out-of-title in the higher position.

 The disputed provisions establish procedures for temporary

"out-of-title" assignments. As PERC found, the provisions do not

require the City to make any out-of-title assignment; they identify

a procedure to be followed after the City has exercised its

prerogative to make such an assignment. PERC reasoned, "Thus, the

language does not interfere with the decision whether to fill a

temporary vacancy and the fact that there is a civil service list

means that the employees eligible to be assigned to the temporary

vacancy are qualified."2

 Citing its prior decisions, PERC noted "it is mandatorily

negotiable for the employer to agree to make promotional

assignments based on an existing promotional list of eligible

employees." In Township of Wall, PERC stated:

 Promotional criteria are not mandatorily
 negotiable while promotional procedures are.
 Absent preemption, an employer may normally

2
 Notably, PERC concluded the first two sentences in Article
18.A.2(d) and language in Article 18.A.2(g) were not mandatorily
negotiable because they would require the City to fill a
promotional vacancy, treading upon a managerial prerogative. The
Union appealed from those determinations and we have affirmed
PERC's rulings.

 25 A-3817-14T2
 agree to promote employees in the order they
 are listed on a promotional list developed by
 applying its own unilaterally-set criteria to
 the eligible candidates. Unless an employer
 has announced a change in its promotional
 criteria, it may remain obligated to fill
 positions from that list.

 [In re Twp. of Wall, P.E.R.C No. 2002-22, 28
 NJPER P33,005 (2001), (citations omitted)
 aff'd, No. A-1640-01 (App. Div. Jan. 6,
 2003).]

 The City argues the authorities relied upon by PERC are

distinguishable and afford no support for PERC's conclusion

because they concerned circumstances in which the public employer

had established its own promotional criteria for filling vacancies

and making personnel assignments, where in this case, the

promotional criteria is established by the fact the City is a

civil service jurisdiction. However, to the extent that

promotional criteria are established by Title 11A, the City lacks

any managerial prerogative to deviate from mandated procedures.

We are therefore unpersuaded by this argument.

 In sum, on the Union's challenges to the following provisions

or portions thereof, 2.C, 16.C.1, 17.D, 18.A.2(d) and (g), 23.A,

23.C, 23.J.1, 23.J.2, 23.J.4, 24.F and 24.G, we affirm PERC's

determinations that the disputed language constitutes terms that

are not mandatorily negotiable. We reverse PERC's determinations

that the disputed language in 16.F.3(e) and 24.A refers to terms

 26 A-3817-14T2
that are mandatorily negotiable. On the City's appeal, we affirm

PERC's determinations that the disputed language in 18.A.2,

18.A.2(c), 18.A.2(d) and 18.B.2(f) refer to subjects that are

mandatorily negotiable.

 Affirmed in part, reversed in part. We do not retain

jurisdiction.

 27 A-3817-14T2