**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2440-18T3

IN THE MATTER OF
CITY OF BURLINGTON
BOARD OF EDUCATION,

      Petitioner-Appellant,

and

CITY OF BURLINGTON
EDUCATION ASSOCIATION,

      Respondent-Respondent.

_____

Argued November 14, 2019 – Decided November 27, 2019

Before Judges Mayer and Enright.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2019-27.

Jeffrey R. Caccese argued the cause for appellant (Comegno Law Group, PC, attorneys; Jeffrey R. Caccese and Alexandra A. Stulpin, of counsel and on the briefs).

Steven R. Cohen argued the cause for respondent City of Burlington Education Association (Selikoff &

Cohen, PA, attorneys; Steven R. Cohen, of counsel and on the brief; Hop T. Wechsler, on the brief).

Ramiro A. Perez argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli-Carneiro, General Counsel, attorney; Ramiro A. Perez, Deputy General Counsel, on the statement in lieu of brief).

PER CURIAM

Petitioner City of Burlington Board of Education (Board) appeals from a January 17, 2019 order and decision issued by the New Jersey Public Employment Commission (PERC) denying its request for restraint of binding arbitration. We affirm.

The facts are undisputed. Respondent City of Burlington Education Association (Association) filed a grievance on behalf of Robert Gurry,[1] asserting the Board violated Article XIII(F) of the parties' collective negotiations agreement (CNA) by requiring Association members who were absent from work on February 8, 2018, to submit a physician's note verifying their illness.

The February 8, 2018 date was significant because it was the day of the Philadelphia Eagles' Super Bowl victory parade. In anticipation of the parade,

---

[1] Mr. Gurry is an employee of the Board and a member of the Association.

on February 6, 2018, the superintendent sent an email to all school district staff that provided:

> Five (5) personal business days requests were approved for Thursday, February 8, 2018. No more will be approved. Please note Article XII[I] of the negotiated contract, Absence on Account of Personal Business – "Requests for personal days shall be granted upon five (5) calendar days' notice to the superintendent or his designee."
>
> If it is determined that the number of staff members absent on Thursday, February 8th, cause a school emergency or jeopardize opening the schools, all approvals will be rescinded.
>
> Please also be aware that a doctor's note can be requested, by code, for any staff absence. If you do not come to work because of personal illness on Thursday, February 8, 2018, you will be required to provide a doctor's note that indicates you were unable to come to work due to illness.

Gurry had been feeling sick for approximately two weeks prior to the parade date. Gurry used sick days on February 7, February 8, and February 12 in accordance with the Board's sick leave policy.

Only for his illness-related absence on February 8, 2018 did the Board request Gurry provide a physician's note. Gurry, in a written email, explained he had the flu and "did not see a physician due to the fact that they do not want people with the [f]lu in their offices and it is a viral infection." Without a

A-2440-18T3

doctor's note, Gurry was notified that his absence on February 8 would be construed as either a personal business absence or unpaid leave.

On March 14, 2018, the Association filed a grievance against the Board on behalf of Gurry and other members similarly situated, asserting that the Board's denial of sick leave on February 8, 2018 constituted discipline without just cause. The Board's superintendent denied the grievance, basing her decision on Board Policy 3212 and N.J.S.A. 18A:30-4, which allows a superintendent or board of education to require a doctor's note for an employee seeking to use sick leave. The Association then requested a hearing before the Board.

The Board affirmed the superintendent's denial of the grievance. In addition to relying on the superintendent's reasons, the Board further explained, "[t]he grievance is also denied because it implicates [a] non-arbitrable topic and is preempted by statute."

The Association requested arbitration in accordance with Article III of the the CNA. In response, the Board filed a petition for scope of negotiations determination with PERC. The Board claimed that arbitration should be restrained because the subject matter of the grievance was non-negotiable. The Board asserted the matter was neither negotiable nor legally arbitrable because

4

the Board had the managerial prerogative to verify sick leave by requesting a doctor's note. The Association opposed the Board's petition.

Because the facts were not disputed, PERC decided the Board's scope of negotiations petition without a hearing. In its order and decision, PERC held that "the application of a sick leave verification policy, i.e. whether an employee was improperly denied sick leave, may be challenged through the contractual grievance procedures." In addition, PERC held that "disciplinary penalties for abusing sick leave and the cost of obtaining verification are mandatorily negotiable." PERC concluded the Association's grievance did not

> challeng[e] the Board's ability to verify grievant's illness. It is challenging the application of the sick leave policy to the grievant, specifically the denial of sick leave on February 8, 2018 after the Board allegedly failed to insist that he obtain a doctor's note at the Board's expense. Thus, the grievance as framed by the Association is mandatorily negotiable.

PERC's order denied the Board's request to restrain binding arbitration of the Association's grievance.

On appeal, the Board argues PERC erred as a matter of law in deeming the request for sick leave verification a negotiable issue. The Board further contends PERC's decision was arbitrary, capricious, unreasonable, and lacked

A-2440-18T3

credible support in the record. In addition, it claims PERC erred in failing to dismiss the Association's grievance as moot.

"The standard of review of a PERC decision concerning the scope of negotiations is 'thoroughly settled.'" City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 568 (1998). We will uphold PERC's decision regarding negotiability unless "it was arbitrary, capricious or unreasonable," "lacked fair support in the evidence," or "violated a legislative policy expressed or implicit in the governing statute." Twp. of Franklin v. Franklin Twp. PBA Local 154, 424 N.J. Super. 369, 377 (App Div. 2012) (quoting Commc'ns Workers of Am., Local 1034 v. N.J. State Policemen's Benevolent Ass'n, Local 203, 412 N.J. Super. 286, 291 (App. Div. 2010)).

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Adoption of Amendments to Ne., Upper Raritan, Sussex Cty., 435 N.J. Super. 571, 582 (App. Div. 2014) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

Our role in reviewing PERC decisions is "sensitive and circumspect." In re Hunterdon Cty. Bd. of Chosen Freeholders, 116 N.J. 322, 328 (1989). PERC decisions are "regulatory determination[s] of an administrative agency that is

invested by the Legislature with broad authority and wide discretion in a highly specialized area of public life." Ibid. Substantial deference is accorded to PERC's exercise of its authority in making a scope of negotiations determination. Twp. of Franklin, 424 N.J. Super. at 377.

In In re Local 195, IFPTE v. State, 88 N.J. 393 (1982), the New Jersey Supreme Court created the following test for determining a scope of negotiation issue:

> [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy.
>
> [Id. at 404; see also Bd. of Educ. v. Woodstown-Pilesgrove Reg'l Educ. Assoc., 81 N.J. 582, 590-91 (1980).]

The Board's establishment of a sick leave verification policy is a non-negotiable managerial prerogative, a legal concept not disputed by the Association. City of Elizabeth v. Elizabeth Fire Officers Assn., Local 2040, IAFF, 198 N.J. Super. 382, 384 (App. Div. 1985).[2] However, the application of

---

[2] The Board argues N.J.S.A. 18A:30-4 preempts arbitration related to the sick leave policy. The issue as framed by PERC is not preemption but whether the Board abused the sick leave policy.

the sick leave policy, including the disciplinary penalty imposed for abusing sick leave and the payment of costs associated with verification of sick leave, is severable and subject to mandatory negotiation. Ibid. In its decision, PERC noted the distinction between establishment of a verification policy, which is the prerogative of the employer, Carteret Bd. of Educ., P.E.R.C. No. 2009-71, 35 N.J.P.E.R. ¶ 76, 2009 N.J. PERC LEXIS 212 at 11-12 (2009), and issues involving the application of those policies, which may be subject to contractual grievance procedures. In re Piscataway Twp. Bd. of Educ., P.E.R.C. No. 82-64, 1982 N.J. PERC LEXIS 590 at 7 (1982). Whether an employer may impose a disciplinary penalty in applying a sick leave verification policy may be reviewed through binding arbitration. New Jersey State Judiciary (Ocean Vicinage), P.E.R.C. No. 2005-24, 30 N.J.P.E.R. ¶ 143, 2004 N.J. PERC LEXIS 168 at 9-10 (2004).

The Board argued PERC erred in allowing arbitration of its non-negotiable right to establish a sick leave verification policy. However, that is not the subject of the Association's grievance. The Association challenged the application of the sick leave verification policy to Association members absent on February 8, 2018. PERC held that while requiring a doctor's note to verify employee absences is fully within the Board's statutory rights, "the application

8

of a sick leave verification policy . . . may be challenged through contractual grievance procedures."

Having reviewed the record, and mindful of the applicable standards for review of PERC determinations, we are satisfied the Board has not shown PERC's decision was arbitrary, unreasonable, capricious, or contrary to well-established precedent. PERC's decision that the Association's grievance is arbitrable is fully supported by the evidence in the record. The merits of the Association's grievance, including the Association's failure to raise issues during the grievance process, and any contractual defenses offered by the Board may be adjudicated by an arbitrator.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2440-18T3